The opinion of the court was delivered by
Tilghman, C; J.
This is an action on a single bill, dated the 9th June, 1814, given by the defendants, Darnel and Nicholas Diehl,for the sum of £ 4814 Is. 6d., payable to Henry King, Jr., or order, on the 1st September, 1814, with interest from the 1st May, 1814. Henry King, J.r. assigned this obligation to his father, Henry King, the intestate. It was alleged by the defendants that the consideration of the single bill, was, legacy bequeathed to the said H. King, Jr., by the will of his grandfather, Peter Diehl, dated the 6th January, 1801. The bequest of this legacy was in the words following: “I also give and bequeath unto Henry King, my grandson (the issue of *420 my daughter Elizabeth, deceased, who was intermarried with Henry King,) and to his heirs and assigns, the sum of one thousand pounds, in real gold and silver money current in Pennsylvania, to be paid to him in two hundred pounds yearly payments, the first payment whereof to be made in 1808, and from thence two hundred pounds successively, until the whole shall be fully paid; nevertheless if the said H. King shall die unmarried and without issue, that then and in such, case, the sum aforesaid so bequeathed shall be equally divided to and among all my children, share and share alike.” Henry King, Jr., the legatee, died unmarried and without issue, after he had assigned the saidsingle bill to his father, without having received payment of any part of the said legacy. He was 21 years of age in the year 1814, and died in 1816. The testator died in 1812. The defendants gave other obligations to H. King, Jr., which he also assigned to his father, Henry, to whom considerable payments were made by the defendants after the death of his son. The bonds given by the defendants were to the amount of the said legacy, of 1000 pounds. On the trial of the cause in the court below, exceptions were taken by the counsel for the plaintiffs to the opinion of the court on several points, which I shall proceed to consider.
1. This cause was tried once before, and the judgment of the Court of Common Pleas was reversed by this court on a writ of error." On the last trial, the opinion of this court delivered on the reversal of the first judgment, was read to .the jury, after which the counsel for the plaintiff offered to read the charge of the President of the Court of Common Pleas, on the first trial, which was placed on the record. To this the counsel for the defendant objected, but the court permitted the charge to be read. I can perceive no error in the admission of this charge. As the judgment was reversed for error in the charge, there was no impropriety in permitting the jury to have a full understanding of it; especially as the court had the caution to tell the jury, that they were not to considerthe charge as evidence of any fact which was stated in it. This- is very different from the case eited by the plaintiff’s counsel, where it was decided by this court, that the report of referees which had been appealed from, could not be read in evidence to the jury by. the party in whose favour the report was, because, after the entry of the appeal, the cause was taken up anew, without any regard to the former proceedings, and therefore the judgment ought not to be influenced by the opinion of the referees. So likewise, this case is quite different from another cited by the plaintiff’s -counsel,in which it was decided, that a verdict which had been.set aside by the court, could not be read in evidence to the jury on the second trial. There would be a manifest absurdity in offering that as evidence which had been annulled by the court. These cases would have applied, if in the present instance, the charge of the court on the first trial, had been admitted as evidence of the law or fact. But, as I understand *421 it, the opinion of this court which referred to the charge having been read, the charge itself was afterwards introduced merely as an appendage to the opinion, and in order to enable the jury more fully to comprehend it.
2. The second error assigned, is in the opinion of the court, that interest was not due on the legacy of H. King, Jr., until the end of one year from the death of the testator. This legacy was made payable in yearly instalments of 200 pounds each, the first of which was in the year 1808, so that the last would have been in 1812. But it so happened, that the testator survived all the periods of payment, so that it was impossible the legacy should be paid at the time appointed by the will. The most reasonable construction, under these circumstances, is, that it should be considered as a legacy payable generally, without appointing any time for payment; in which case it would have been payable at the end of a year from the death of the testator. Consequently it did not bear interest until that time, and the opinion of the Court of Common Pleas was right.
3. The third error assigned, is in the court’s opinion, that Henry King, Jr., was not entitled to any part of the surplus of the testator’s personal estate, which remained after paying all the debts and legacies. This is purely a question of intention. The testator created a fund for payment of his debts, &c. viz: all his outstanding debts, several sums of money to be paid by his sons, to whom he had devised particular parts of his real estate, the proceeds of certain lands and houses which he ordered .to be sold by his executors, and all his other personal properly; and he directed that if any surplus should remain after payment of his debts, &c. it should be equally divided among his four sons, Peter, Nicholas, Jacob, and Daniel. There is nothing given to his grandson, H. King, J., except the legacy of £1000; and his intention appears clear, that all his personal property of every kind which remained after payment of his debts, &c. should go to the four sons whom he made residuary legatees of his personal estate. I agree in opinion therefore, with the Court of Common Pleas, that H. King, Jr., was entitled to no more than his legacy of £1000.
4. 5, 6. The fourth, fifth, and sixth errors, will be most conveniently considered as one subject. After the death of Henry King, Jr., several payments were made by the defendants to his assignee, Henry King, amounting in the whole to upwards of @2000. The defendants pleaded payment, with leave to give mistake, want of consideration, and special matters in evidence. The plaintiffs did not call for a specification of the special matters, as they might have done by the rule of court, and in this manner the cause went to trial. On the trial, the defendants in the first place gave evidence of want of consideration, by showing that the single bill on which the action was founded, was given on account of the legacy of £1000 bequeathed to Henry *422 King, Jr., by his grandfather, and that by the death of the legatee, the principal of the legacy went over to other persons. All this was right enough. But the defendants did not stop there. They gave evidence also, of all the payments made by them to II. King the father, after the death of the son, and contended that under our defalcation act, they were entitled to recover of the plaintiff the several sums which they had paid, with interest from the time of payment, and in this the court agreed with them. As this cause will go to another trial, I shall, in order to free it from all embarrassment, consider three questions which appear to be material. First, Under the pleadings in this case, could the defendants recover any thing of the plaintiffs under our defalcation act ? Secondly, Supposing they could, would they be entitled to interest on each of the payments made by them, from the time of payment ? Thirdly, Under all the circumstances of this case, are the defendants entitled to recover any thing of the plaintiffs? First, then, as to defalcation. When the defendant pleads payment, with leave to give want of consideration, and the special matters in evidence, he can only give such matters in evidence as show, that the plaintiff has no right to recover. He may defeat the plaintiff’s action, but there must stop. He can recover nothing against the plaintiff. But when he pleads payment, with leave to give defalcation in evidence, he may give evidence of matter which entitles him to a recovery against the plaintiff. The plaintiff, if he will, has a right under the rules of court, to call for a specification of the defalcation; but if he does not call for it in due time, the defendant is left at large to give evidence of any matter which may be defalked under our act of assembly. This I think is the fair construction of the rule of court which has been shown to us; and therefore the defendant had no right under the pleadings in this action, to go into evidence which might entitle him to a recovery against the plaintiff. But supposing he could have gone into such evidence, was the court right in charging that the defendants were entitled to interest from the time of payment? I think that matter should have been left to the jury. In liquidated debts, on bond, note, &c. interest may be said to be matter of law. But the present case, was very peculiar. The defendants made a voluntary payment to the plaintiffs, and both parties thought that the payment was proper. Both supposed, that the thousand pounds legacy was the absolute property of Henry King, Jr. In this they were mistaken. On the death of H. King, Jr., the legacy went over to the children of the testator. But the plaintiffs could not be blamed for receiving what they thought was their right, and what the defendants were willing to pay. Until the defendants explained the mistake and demanded repayment, it cannot be said that the plaintiffs unjustly withheld their money, and should therefore be subject to interest. In Brown v. Campbell, I Serg. & Rawle, 176, this court was of opinion, that where a man received the money *423 of another, supposing it to be his own, interest should not be charged against him until the money were demanded and payment refused by him. The present is a case, which, under all its circumstances should have been left to the jury, and the court was wrong in charging as matter of law, that interest was recoverable from the time of payment. But were the defendants entitled to recover in any form of action, the money which they thus voluntarily paid to the plaintiffs. The legacy of -£1000 bequeathed to H. King, Jr., belonged to him, at all events, during his life. Perhaps the executors of the testator might have insisted, that he should give security for payment to the legatees over, in case of his death, unmarried, and without issue. But I do not know that they were obliged to do so. In such a case, chancery would see that security was given, on a bill filed by the legatees over, and with us, who have no chancery, perhaps, on notice from such legatees to the executor not to pay without security, it might be his duty to act accordingly. I think, that on receiving such notice, the executors ought to put the legatee for life to his action, and the court would take care that no execution should'issue till security given. But in the. present case, so far from giving notice, the parties concerned thought that H. King, Jr., had an absolute property in the legacy. The executors, therefore, who consented that the money should be paid to Henry King, Jr., would not be liable to an action by the children of Peter Diehl, whose remedy must be sought against II. King, Jr., or his assignee who received the money. I take for granted that II King, the father, received an assignment of this bond from his son, as a gift, without valuable consideration. But although the executors would not be liable to an action, I will not say whether they might not have supported an action to recover the money paid on account of the legacy as trustees for the children of Peter Diehl. That, however, is not the present case, for the defendants are not the executors of Peter Diehl, but the guardians of II King, Jr. Now, what right have they to this money? It belongs not to them, but to the children of Peter Diehl. The executors of Peter Diehl came to an agree.ment with Henry King, Jr., in consequence of which the defendants gave their bonds to King, and he gave the executors a release for his legacy of J21000. The defendants paid part of their bonds, in which they were justified. They are not responsible to the children of Peter Diehl for the money so paid, because it was never in their hands as trustees for those children. But the estate of Henry King, the father, is accountable, supposing that he received the assignment of the bonds as a gift from his son. There is no reason therefore, why the defendants should be permitted to recover back the money which they paid voluntarily and lawfully. Let it be recovered by the children of the testator, to whom it belongs. Upon the whole, I am of opinion that the judgment should be reversed, and a venire de novo awarded.