Putnam J.
delivered the opinion of the Court. The questions arising in this case are, first, whether the defendant is liable to pay interest from the time when he received the money, to the time when the plaintiff, as the executor of Unite Dodge deceased, demanded payment.
*391 And if so, then, secondly, upon what amount the interest shall be calculated.
The action is upon an implied assumpsit, and the judgment sounds wholly in damages for the non-performance of the contract or undertaking. If the interest is not included in the contract, it cannot be given. If it is included, then it should make up a part of the judgment.
This rule applies as well to implied, as to express contracts, and to verbal, as well as to written promises. Where there is an express promise in writing to pay interest, the amount of the damages becomes a mere matter of calculation. But whether there has been an implied promise to pay interest, often depends upon the usages of trade and dealings between the parties [1] and other circumstances, which explain the duty undertaken to be performed. And if upon the whole matter the defendant has not performed it, interest is to be assessed as damages for the breach. If it were not so, the remedy would be incomplete. Those usages of trade, and other facts and circumstances, and the dealings between the parties, are proper subjects for the consideration of the jury. But when they are agreed by the parties or found by the jury, the law arising from them is to be declared by the Court.
If, for example, one should promise in writing to pay money to another on a day certain, and fail to do so, interest would be added to the amount of damages, notwithstanding the writing did not express it. It would be added as a compensation for the non-performance of the contract. If there were a verbal contract to the same effect, the same rule of damages should be followed. The case of Robinson v. Bland, 2 Burr. 1086, is a leading one upon this point. It was before the revolutionary war, and was determined by Lord Mansfield and his able associates, upon sound principles. It was for money lent in France, for the security of which a bill of exchange was drawn payable at short sight in England. The bill of exchange however was avoided, because it was given for money lent at the *392 time and place of gaming. The contract raised by the law, to Pa7 f°r the money lent, was held to be good, although, the security was void. Upon the facts found, the court were to determine whether interest should be payable ; and they held, that it was to be inferred from the facts proved, that the money was to be paid in England at a certain time, and that interest should be added, as part of the damages, up to the time of the judgment.
There the borrower, Sir John Bland, died, and there was no express promise concerning interest. The money was not paid. Lord Mansfield said, “ Although this be nominally an action for damages, and damages be nominally recovered in it, yet it is really and effectually brought for a specific performanee of the contract. For where money is made payable by an agreement between parties, and a time given for the payment of it, this is a contract to pay the money at the given time, and to pay interest for it from the given day, in case of failure of payment at that day.” Wilmot J., in a very able opinion, said, (p. 1083,) the damage was the whole interest due upon the money lent, from the time of its being payable, up to the time of signing the judgment. Interest was added to the principal sum accordingly, and the judgment was for the aggregate sum, as damages for the breach of the contract.
If the money is not paid at the day stipulated, the debtor is in fault. He detains the money of his creditor. So if the money is payable upon demand, interest is allowable after a demand, by writ or otherwise. The law supposes the party to be in fault, if he does not pay upon demand.
The great inquiry is, whether the party has done all that the law required of him in the particular case ; whether acting on his own account, or as agent, executor, administrator, guardian or trustee for others. If he has, he is not accountable for interest ; if he has not, he is accountable for it as a compensation for the non-performance of his contract.
There are cases where the law requires the party to pay over money which he has acquired, immediately, without waiting for any demand or request of payment; as where he has obtained it by fraud. The promise which the law implies, extends as well to the interest as to the principal sum, so wrongfully ac* *393 qu red and detained. In Wood v. Robbins, 11 Mass. R. 506, the party was originally, and continually in fault.[1]
The same rule applies where the party received the money lawfully for a particular purpose, and misapplied it; as in Fowler v. Shearer, 7 Mass. R. 14, where the defendant (who was au attorney) should have indorsed it on a note which he held for collection, but did not, and in consequence of his neglect the promisor was obliged to pay the whole of the note. It was held that the attorney was accountable for interest, as well as principal, and Parsons C. J. thought that the interest should commence from the time of payment. That was an action for money had and received.
The same rule is recognized in Hughes v. Kearney, 1 Sch. & Lefr. 134, where the vendee retained part of the purchase money to pay off incumbrances, but did not. It was determined that it should carry interest, because there was a misappropriation.[1]
The same rule should apply where a party has acted as agent to render a reasonable account, but has omitted to do so for an unreasonable time. Interest should be calculated from the time of the breach of his undertaking. Crawford v. Willing, 1 Dallas, 349, note.2
If the party were a stakeholder without fault, he. would not chargeable, notwithstanding the money were in his hands several years. Lee v. Munn, 8 Taunt. 45.
S. P. in Williams v. Storrs, 6 Johns. Ch. R. 353. But “if the agent had received the money,” said the Chancellor, “ and neglected for a long time to inform his principal of the fact and wilfully suffered him to remain in ignorance that his *394 debtor had paid to the agent, there would be equity in requir *n§ the agent to pay interest, for here would be a case of default, and breach of duty.”
A factor is in duty bound to account to his principal, in a reasonable time, without any demand, in cases where a demand would be impracticable or highly inconvenient. He would be held, according to the course of business, to give his principal information of his progress in the transaction, and if he should neglect unreasonably to forward his account to his employer, this negligence would be a breach of his contract and subject him to an action. Clark v. Moody, 17 Mass. R. 149 ; Lady Ormond v. Hutchinson, 13 Ves. 53 ; Earl of Hardwicke v Vernon, 14 Ves. 504.
It is the settled law of New York, that interest is to be allowed for money received or advanced for the use of another, “ after a default in payment.” Campbell v. Mesier, 6 Johns. Ch. R. 24.
So if the agent had engaged to invest the money, but omitted to do so, he is to answer for the interest from the time he should have invested. Brown v. Southouse, 3 Bro. C. C. 107 ; The People v. Gasherie, 9 Johns. R. 71.[3]
There are some late English cases, which would seem to be contrary to the rule requiring interest after non-payment at a day certain.[1]
Thus in Gordon v. Suan, 12 East, 419, which was for the price of goods sold and delivered payable on a certain day, Lord Ellenborough said, that “ the giving of interest should be confined to bills of exchange and such like instruments.” No reasons are given, and it is not easy to see why the same rule of damages should not be applied in that case, as in the' case of any other contract for money to be paid at a certain day.
In Higgins v. Sargent, 2 Barn. & Cressw. 348, the restriction of interest to mercantile securities was recognized, and *395 Abbott C. J. stated the rule to be established, that interest is allowed by law only upon mercantile securities, or in those cases where there has been an express promise to pay interest, or where such promise is to be implied from the usage of trade or other circumstances.
Now I have no objection to this general rule, but I very much doubt the application of it according to the case of Higgins v. Sargent. That was on a policy upon the life of one Burton, payable in six months after proof of his death. It is difficult to perceive a good reason why interest should not have been given after the money ought to have been paid according to the promise. That, we have seen, was the principle adopted by Lord Mansfield and his associates, where the promise was raised by implication of law. A fortiori would it seem to apply to an undertaking in writing. Lord Thurlow, in Boddam v. Ryley 1 Bro. C. C. 239, and 2 Bro. C. C. 2, after noticing many cases, comes to the conclusion, that “ all contracts to pay undoubtedly give a right to interest from the time when the principal ought to be paid.”
We have no statute regulating this subject, and none is ne cessary. Upon the principles of the common law,' we think it clear that interest is to be allowed, where the law by implication makes it the duty of the party to pay over the money to the owner without any previous demand on his part. Thus, where it was obtained and held by fraud, interest should be calculated from the time when it was received. So, where there has been a default of paying according to agreement, express or implied, to pay on a day certain, or after demand, or after a reasonable time.
The nature and extent of the undertaking must depend upon the facts proved in each particular case. But when it is ascertained at what time the money should have been paid, the law raises a promise to pay damages for the detention after the breach of the contract. For it is the essence of every assumpsit or undertaking, that it is to be performed specifically, or that damages shall be paid for the non-performance.
We proceed to apply the facts in this case to the principles of the law above stated, to ascertain whether Messrs. Perkins *396 have performed their agency according to the requisitions of the law' '
. . There seems to be no objection to their transactions from 1804, the time when they undertook the agency in regard to these bills, to June, 1805, when they were delivered to Hottinguer & Co. at Paris by James Perkins, and Unite Dodge was put into direct communication with that house. The counsel for the defendant contended, that the agency of Messrs. Perkins then ceased, and that Unite Dodge so understood the matter, as appears by the entry in his books discharging Messrs. Perkins and charging Hottinguer & Co. as agents for the collection. We think that reasoning is correct. The house of Messrs. Perkins had so far certainly done all that could be reasonably required. They had promptly remitted the bills to Paris for collection, and they advised their principal of their doings and of the progress of the affair frequently. Their trust was surrendered to Hottinguer & Co. and undertaken by that house, and Unite Dodge assented to the transfer. If Messrs. Perkins had done nothing more in the case, there would have been an end of their agency.
In September, 1806, Messrs. Brun, Fréres, made certain inquiries of Hottinguer & Co. concerning these bills, with intent, obviously, to get them into their own hands. Hottinguer & Co. gave immediate information to Messrs. Perkins, saying that it was evident in that affair they had no account to render but to James & Thomas H. Perkins. That was assented to by Messrs. Perkins, who, on the 19th of December, 1806, advised Hottinguer & Co. that these bills were indorsed to them and had become their property. The legal title might be considered in Messrs. Perkins, by reason of the indorsement; but the equitable right was in the estate of Unite Dodge, who had deceased six months before that time. These directions were given, probably, to assist Hottinguer & Co. in evading the impertinent inquiries of Brun, Fréres. Be that as it may, it was a voluntary or assumed agency on the part of Messrs. Perkins ; but an agency, however, which, by the rules of the law, subjected them to reasonable accountability. Whether they knew that Unite Dodge was then dead, does not appear ; but whether they did or did not, they undertook to manage fot *397 whomsoever it might concern, and to give notice and to render a reasonable account of their doings. But no notice was given. The attention of Hottinguer & Co. was withdrawn from U. Dodge or his representatives, and directed to Messrs. Perkins.
It is not suggested that those gentlemen adopted this course from any improper motive. Their previous transactions indi caled not only good motives, but an extraordinary degree of in terest in the welfare of Unite Dodge. No fraud is imputed to the defendant. The counsel for the plaintiff disclaim any such suggestion. They do not charge any intentional misappropriation or misdirection of the fund on the part of either partner, or any intentional concealment of its existence. And we decide the case upon that ground.
But the defendant contends that there has not been any neglect on the part of himself or of his house ; that the extiaoi dinary lapse of time between the receiving of the bills in 1804, and of the money proceeding from them in 1822, and their little value for so many years previous to their liquidation in 1815, connected with the fact that the business was conducted by the deceased partner, and that during that whole period the house was engaged in extensive business, accounted for the fact, that the surviving partner should not have borne in mind the claim of Dodge.
But the estate of Dodge ought not to suffer from those con siderations. If the Perkinses have occasioned loss and damage to it by their neglect of duty, assumed or implied by law, they are answerable.
This claim on the French government rested in the hands oí Hottinguer & Co. until 1815, when it was liquidated for account of Messrs. Perkins : of which liquidation they were duly informed. But no notice of such liquidation was given to the heirs of Unite Dodge.
It has been urged, that Messrs. Perkins were not bound to look the world over for the owners of this property ; that the neglect is to be ascribed to the plaintiff in not calling upon Holtinguer & Co. ; for he had Unite Dodge’s books and papers, which show that the French house had the bills for collection.
We think however, that the plaintiff might well have rested upon the belief and expectation, that Hottinguer & Co. would *398 have given information to the heirs of Unite Dodge, if they had any worth giving.
_ The claim still continued in the hands of Hottinguer & Co. until the death of James Perkins in 1822 ; when the defendant, who acted as liquidator, directed the French funds belonging to his late house to be remitted to London. The proceeds of the bills which belonged to the estate of Unite Dodge were included with the funds of Messrs. Perkins. The proceeds of the whole were accordingly placed in the hands of Samuel Williams ; and the defendant drew bills for the same, which were paid. No notice of these transactions was given to the heirs of Unite Dodge.
It has been urged however for the defendant, that he did not personally know that there were any funds in his hands which belonged to the estate of Unite Dodge. And we have no doubt of the truth of that suggestion. But we think it very clear that he ought to have known it. He is chargeable on the ground of negligence on the part of his house, (James Perkins having undertaken the management of the business,) for which he is legally responsible, a loss having arisen thereby to the estate of Unite Dodge.
James Perkins had conducted the affairs relating to the St. Domingo bills. If the defendant had personally known that a part of the funds remitted to Williams belonged to the estate of Unite Dodge, we think he could and would have informed the mother or brother or the family of the deceased in Boston. The same disposition which congratulated the mother upon the safe arrival of her son from the desolations of St. Domingo, would have induced the defendant to give any other information to her and the family, in which their interests were involved. The truth was, as we believe, that this affair escaped the attention of the house of Messrs. Perkins. But in point of law, we are clear that no sufficient excuse is shown for their neglect. An account of this agency should have been carried forward into the books of the company.
It has been argued, that it was res inter alios acta ; that it would have been an absurdity to keep the account which concerned Hottinguer & Co. and Unite Dodge, in the books of James & Thomas H. Perkins. But it would seem to be as *399 great an absurdity to undertake the management of this concern for the benefit of Unite Dodge or his estate, and mix it up with their own on the company books, without clue or credit which should lead to a proper adjustment. It was not an affair inter alios. When the bills were received, James Perkins made a proper entry in his memorandum book, by which it would appear that his house had duties to perform for the account of Unite Dodge. If there would be an objection to the carrying of that account to bills receivable generally, a separate account might and should have been opened with “ bills receivable on account of Unite Dodge,” or “on credit,” or in some form, which would have exhibited the true state of the af fair. If that had been done, we have no doubt that the liquidator would have taken proper measures to fulfil the agency. The plaintiff would have had the immediate benefit of the funds remitted to London. But the plaintiff is not to suffer from the omission. The neglect of one partner must affect both. It is no justification for withholding compensation, that the business was managed by the senior partner. Both were equally accountable in law.
It has been argued that there was no person legally authorized by law to receive the money and give a valid discharge for it. But that circumstance should not avail, if it were occasioned by the laches of the defendant. It appears that this was a very important part of Unite Dodge’s property. It was the wreck saved from the disasters of the revolution in St. Domingo If this were lost, the expense of an administration might have been unnecessary. If the mother and brother had been informed of the facts, it cannot be doubted but that an administrator or executor would have been appointed here. The will was proved in New York in 1807.
The argument that this was a friendly agency, undertaken without any expectation of commissions for services, we think cannot make any sufficient excuse for the want of reasonable care in conducting it.
Nor is the suggestion that the defendant has had no gain, to be received as an excuse for the loss which the estate of Unite Dodge has sustained. Although these funds were not invested after they were remitted to London, they constituted a part of a *400 large sum, which the great concerns of the defendant’s house required to be on hand to answer as the occasions should require. But the defendant is not chargeable upon that ground, but because there was a failure to bestow that care, which the law required, in the management of the business.[1]
It has been urged, that the defendant was not answerable as agent or factor, until after demand. That is true as a general proposition ; but the omitting to render an account after a reasonable time, makes a demand unnecessary. We all think that the law required the defendant to take the first step, under the circumstances of this case.
We cannot think that this is a case of mutual mistakes, which is remediless because both parties were alike guilty of laches.
And upon consideration, we are all of opinion that the law requires the defendant to account for the interest for the time it is claimed in this action.
It is then to be considered, upon what sum or principal the interest should be calculated.
This presents two questions : 1. Whether the bill for 9842,91 francs (which in the argument was called the fourth bill) is to be included ; and 2. whether the plaintiff shall recover upon the value of the funds invested in France at the rate of exchange on Paris, or for the exchange on London, which was received by the defendant.
And upon a careful examination of the evidence, we are satisfied that the fourth bill is to be included in the judgment.
It has been said that the defendant should not be answerable for interest upon the fourth bill, because it was indorsed to James Perkins individually, in France, and not to the house ; and it was doubtful, to say the least, to whom it belonged, as James Perkins stated in his book, that it belonged to P. B. & Co., meaning Perkins, Burling & Co. But we are entirely satisfied that he was mistaken. That bill was received by him in France, after the other three bills had been received in Boston. His original entry therefore contained an account of only the three bills received. But he delivered the fourth bill to *401 Hottinguer & Co. and informed them that it belonged to Unite Dodge. And Unite Dodge made an entry of this bill in his books, describing it particularly ; and he included it in his statement to Hottinguer & Co., and they repeatedly refer to it with the others, to make up the sum of 43099,76 francs. We have therefore all the parties concerned, when the transaction was recent, declaring that bill to belong to Dodge. The account of Hottinguer & Co. of the liquidation of the bills by the French government, was received by James Perkins in 1815, at Boston ; and finding in his memorandum book an account of only three, he accordingly placed those only to the credit of Dodge. If the fourth had been entered, or if he had recollected the transaction, he would without doubt have included that also. The proceeds of this bill came into the account of the late firm, and have been received by the liquidator. He became legally accountable for the interest upon the proceeds of this, as of the other three bills.
In regard to the exchange, it is to be considered that the funds were to be remitted to London according to the original undertaking of Messrs. Perkins. It is so stated by James Perkins in his book ; and we think it fair to presume, that the agency was resumed upon the same terms upon which it was originally taken. That was the usual mode adopted by American merchants, and was adopted by the defendant in 1822. The plaintiff assents to that course. The funds so remitted to Williams should have been placed to the credit of the estate of Unite Dodge, and the plaintiff would have been entitled to the benefit of the rate of exchange. We all think that the verdict is right in that respect.
There were some accidental miscalculations, which were agreed by the parties to be rectified, which will be done accordingly ; and the verdict is to be altered conformably to the principles before expressed.

 See Reab v. M'Allister, 8 Wendell, 109; Wood v. Hickok, 2 Wendell, 501; Reid v. Renssellaer Glass Factory, 3 Cowen, 436; Chitty on Contr. (4th Am. ed.) 506.

 See Walker v. Bradley, 3 Pick. (2d ed.) 262, note 1 ; Depcke v. Munn, 3 Carr. & Payne, 112; Hicks v. Mareco, 5 Carr. & Payne, 498; Goodchild v. Fenton, 3 Younge & Jerv. 481; Chitty on Contr. 504 ; Taylor v.Knoz, 1 Dana, 398; King v. Diehl, 9 Serg. & Rawle, 409; Graham v. Williams, 16 Serg. & Rawle, 257; Fashalt v. Reed, 16 Serg. & Rawle, 266.

 So where the purchase money was not paid because of an action brought against the vendee on an adverse claim set up to the property sold, the vendee having held the possession, while payment was delayed, and the action having resulted in favor of the vendee. Selden v. James, 6 Randolph, 465. See also Brockenhrough v. Blythe, 3 Leigh, 619; Hart v. Brand, 1 A K. Marshall, 161.
See Stoiy’s Comm. Agency, 192.

 See Harrison v. Long, 4 Desaus 110.

 See Marshall v. Poole, 13 East, 99; De Bernales v. Fuller, 2 Campb. 428, 429; Calton v. Bragg, 15 East, 225; Chitty on Contr. (4th Am. ed.) 504, 505 Page v. Newman, 9 Barn. & Cressw. 378; Foster v. Weston, 6 Bingh. 709 Newson v. Douglass, 7 Har. & Johns. 417; Reab v. M'Allister 8 Wendell, 109

 See Story’s Comm. Bailments, (2d ed..) 134 et seq.