Mr. Justice Walker delivered the opinion of the court. Thompson brings this suit to recover five hundred dollars which it appears the sheriff of Phillips county, under a misapprehension of law, received from him and paid into the Treasury. We will first examine into the sufficiency of the plea of limita-tation. The State relies upon the 12th Sec. Dig. 203, which provides that “All persons having claims against the State shall exhibit the same with the evidencés in support thereof, to the Auditor to be audited, settled and allowed within two years after such claim shall accrue and not after.” The 13th sec. provides that “In suits brought in behalf of the State no set-off shall be allowed which has not first been presented to the Auditor and allowed.” The 14th sec. authorizes the Auditor to issue process for witnesses, examine them on oath and pass upon the claim. These sections were evidently intended to establish'a tribunal to examine and pass upon claims presented against the State, and to limit the time for their presentation. The important inquiry in the present case is as to whether the terms “all claims” are to be taken in a comprehensive or a limited sense. By the 7thSec. the Auditor is made the general accountant for the State: by the 9th Sec. he is required to audit, adjust and settle all claims against the State payable out of the Treasury; to draw warrants upon the .Treasury for money: to express in the body of each warrant which he may draw on the Treasury for money the particular fund appropriated by law out of which the same is to be paid. These and numerous other duties and powers clearly indicate that the 12th, 13th and 14th sections have direct reference to the exercise of the power thus conferred; all of which, as well as these sections, pre-suppose the existence of some law authorizing the liquidation of the claim and providing for its payment. But cases, where the claim is not thus provided for by law, are not embraced within the provisions • of the 12th section, for we will not presume that the legislature intended that claims should be presented which the Auditor had not power to hear and determine. We have found no Statute authorizing the Auditor to audit a claim of this kind: nor is there any provision made by law for correcting such mistakes. This being the case, the 12th section does not apply to the present case, and the demurrer was properly sustained to the plea of limitation. The next question is whether the State is liable for interest; and if so, from what time shall it be computed? The rule in regard to interest, where there is no express con- • tract, is, that where the principal is to be paid at a specified time, the law has always implied an agreement to make good the loss arising from a default by the payment of interest. 2 Burr. 1086. This proceeds entirely upon the idea of a default; and it is a universal maxim, that, when interest does not run with the principal, none accrues until default is made in payment. 5 Cowen 611. Kent C. J. in Day vs. Brett, 6 John. 24, says “Money received or advanced to another carries interest after a default in. payment.” In the case of Lynch vs. De Vian, 3 John. C. 310 it is said, “It is a settled rule that 'money received to the use of another and improperly retained always carries interest.” Spencer J. in his very learned and thorough review of the law of interest, in the case of Renss. Glass Factory vs. Reid, 5 Cowen, 615, after referring to 9 John. 71. 13 John. 255, 11 Mass. 504, 13 Mass. 232. 1 Dall. 349. 4 Dall. 289. 3 Binn. 123 and 1 Serg. & Rawle 179, says, “All these cases allow interest where there has been fraud, injustice or delinquency, and none of them put the allowance of it on the ground of gain or benefit to the debtors for the use of the money alone.” In Pennsylvania, interest is recoverable in as-sumpsit for money had and received, on money paid by mistake from the time of explanation and payment demanded.” Ring vs. Diehl 9 Serg. & Rawle 409. These authorities we think in point, and it only remains for us to apply them to the case before us un • der consideration. In this case the money was not only paid under a misapprehension of legal liability, but it was paid by athird person against whom the State had no claim, and to an agent who was not required to disclose to the State of whom he received the money. No presumption could arise that the State had any knowledge whatever of the claim of plaintiff to the money. On the contrary, the most violent presumption arises that the money paid in by the collector was collected from those assessed for taxation, and with regard to this particular sum, that it was collected of Darby Pentecost whose billiard table had been improperly taxed. But reviewed in the most favorable attitude for the plaintiff’, he could not claim interest until he had presented himself as the real owner of this money and demanded it. The State, who must be presumed to be ever ready and anxious to pay all her debts and to do justice to all her citizens, could not, in the language of Kent C. J. be considered “in default of payment,” or in that of Spencer J., “guilty of fraud, injustice and delinquency.” We have thus far examined the question placing the State on the same footing of other litigants, leaving the main question to be determined as to whether the State can in any instance be held accountable for interest upon her liabilities. This ques • tion, we confess, is entirely new, and one in which neither the research of counsel nor the examination of the court has furnished a single adjudicated case in point. We are left therefore unaided by precedent to decide it upon general principles, in view of the various statutory provisions relating to the financial system adopted by the State. In order to a correct understanding of this question we should bear in mind the true character and relative position of the parties. The State Government is vested with certain sovereign powers, necessarily conceded to it as incident to that supreme authority which the governing must possess over the governed. This supreme authority is delegated for the public good and exercised with a view to the accomplishment of that end. Its liabilities are all incurred for the purpose of defraying the expenses of the government. It has no private purposes to subserve. It incurs no responsibilities but those incident to the due administration of the law, and possesses no estate out of which fo meet them but the common revenue placed in the treasury for that purpose. It is a well established rule that this supreme authority is never presumed to be exercised to the injury or prejudice of the citizen. The State is presumed to be prepared and willing to meet its liabilities and to do justice to all its citizens. This presumption is inseparably connected with the very idea of sovereignty and upon this familiar principle mainly rests the rule established by the English Courts and reaffirmed by an unbroken chain of decisions of the American Courts. The King vs. Cook, 3 Term. Rep. 521. 2 Ld. Raym. 1066. United States vs. Hoar, 6 Peters 666. 18 John. 228. The People vs. Gillett, 4 Bibb 528. Cone vs. McGowan, 7 Mo. R. 196. Parbo vs. State, 2 Tenn. R. 352 ; and 4 Hen. & Mun. 65; are all cases which sustain the principle that a general Statute of limitations shall not be construed to embrace the State unless specially embraced by name within its provisions; and place it upon' the ground that the State is never to be presumed in default or derelict in duty. And the same principle applies with equal if not additional force to this question of interest, as we will now proceed to show. Interest was unkown to the common law, and the taking of any rate of interest was held unlawful. 37 Henry 8 Chap. 9, was the first Statute in England on the subject of interest. Prior to that time all interest was contrary to law. The right to recover it is therefore derived exclusively from Statutory provisions.— The language of our Statute is “ Creditors shall be allowed to receive,” &c. Now the question is, does this term “ Creditors ” embrace within its provisions the State, or shall the State be held exempt from its operation under the same rule of construction given to the Statute of limitation ? The language of that Statute is equally broad and emphatic; it says: (in its legal effect) “ All actions of assumpsit shall be brought within three years.” To this point the authorities are clear, that the State is not embraced within the limitation, because neglect or default is not to be presumed as against the State. The same principle applies with equal force to interest. The authorities are numerous and conclusive, as shown in investigating the first branch of the subject, that interest does not run until “ after default of payment.”— Therefore if it requires express language by name to bring the State within the provisions of the one act, it must necessarily require the same express enactments to bring it within the provisions of the other. Passing from this view of the point there is still another which demands our consideration. It is this: The State has established, by law, a system of finances embracing within its provisions all her liabilities, and specifying how they are to be paid. These provisions may be found in the 7th, 9th, 10th, 12th, 16th, 17th and 22d sections Dig., under the head of Auditor and Treasurer, page 201, 204. These sections conclusively show that the'State has provided a mode for the payment of all her debts out of a common fund raised by taxation for thatpurpose, pointed out the manner of presenting and allowing them, limited the time for their presentation, directed the warrants to be drawn in a particular manner so as to secure their payment in proper order, and place all claimants on an equal footing. The 22d section is in the following language: “ No warrant issued, or which shall be issued, shall be received in payment of debts due, or which shall become due the State, or the Bank of the State of Arkansas or its branches, nor shall any such warrants, under any circumstances, bear interest, or be received or allowed as an offset in any suit commenced, or which shall be commenced for the recovery of money due or which shall be due the State, or the Bank of the Slate, or any of the branches of said Bank, but such warrant shall only be received and paid by the State Treasurer.” When it is remembered that by the 12th section every7 description of claim recognized by law, is required to be presented to the Auditor, whose warrant by the 22d Sec. is not allowed to draw interest, and that the State has made provision for suit against her for the purpose of establishing or proving such claims as are not embraced within the provisions of the 12th Section, such, we thinly will be found the legal effect of the judgment. The 6th Section Digest 962, provides that “when judgment shall be rendered against the State, it shall be the duty of the Auditor of Public Accounts to transmit to the General Assembly a copy of such judgment and the proceedings thereon, and an appropriation shall be made to satisfy the same.” This judgment gives the party no right to execution. The State has no property subject to be levied on and sold, greatly assimilating itself to the provision in the administration law, which provides for the allowance of claims by the administrator, or for suit in the Circuit Court._ Like the judgment there, it is in effect but the approval of the claim, and places this claim in precisely the same situation that is contemplated under the 19th Sec. Dig. 204, which says: “In all cases where the law recognizes a claim for money against the State and no appropriation shall be made by law to pay the same, the Auditor shall audit and settle the claim and give to the claimant a certificate of the amount thereof, under his official seal if demanded, and report the same to the Governor, who shall lay the same before the General Assembly.” This certificate of the Auditor and this judgment of the Court stand in identically the same situation. They are for all legal purposes the same, and both are referred to the General Assembly for an appropriation; and nothing takes the case before us out of the operation of the 12th Sec., but the fact that the claim was not recognized by law. Had it been, and no appropriation made for its payment, it would have come within the provisions of the 19th Sec., and should have been presented for certificate of approval,- but not being recognized as a valid claim by law, the claimant had a right to resort to his suit against the State to establish the legality of the claim. Now it is perfectly clear that if this claim had been presented to the Auditor, interest could not have have been allowed, and shall he be entitled to interest simply because he has sought a different tribunal before which to establish his claim ? We think not. The State has adopted a general system of payments for all her debts, placed all her creditors upon the same footing, and we can see no reason for placing one class of claimants in a better situation than another; and whilst, from public policy or necessity, the State withholds interest from her creditors generally, that simply because the claimant has resorted to a different tribunal to establish the validity of his claim, he should receive more than he could otherwise have claimed. That delay, and consequently loss, frequently occur to claimants, we have no doubt; these are incident to the circumstances connected with the administration of law, and the relative position of the parties, and should be borne by all creditors alike. Upon examination of the whole question, both as regards the liability of the State in her sovereign capacity, and of the several Statutes on the subject, wc are of opinion that the State is not liable for interest in any case unless by express agreement she makes herself liable. As regards the admission of the depositions in evidence, we think there was no error. From the state of the case it is very questionable whether a certified copy of the entries in the Register’s Books would have furnished any evidence whatever. The plaintiff was not known upon the books, nor does his right to recover depend exclusively on the fact of his having paid the money as taxes. If the plaintiff must prove a privity of contract between bimself and the defendant, and that the money is his, this he may do by parol evidence. The Circuit Court erred in allowing the plaintiff interest, and for that reason the judgment must be reversed. Let the judgment be reversed with costs.