## ⸝ Wilson *against* Stoxe.

Judgments against an *equitable* estate in land, rank, like others, according to dates.  *Hence*, the holder of the *legal* title thereto, who, under his judgment for the purchase-money has sold the equitable estate, has no preference, as such holder of the legal title, over an older judgment, as to the proceeds of sale in the sheriff's hands.

APPEAL by Martha Wilson from the decree of the common pleas of *Fayette* county, distributing the proceeds of the real estate of William M'Williams sold at sheriff's sale.

The court referred the case to an auditor, James Veech, Esq., who made the following report of the facts and his conclusions upon them.

Richard E. Stoxe, the execution creditor above named, was the owner of the real estate levied on and sold, and on the 15th March, 1833, entered into an article of agreement with William M'Williams, the defendant, of which the following is a copy:

" This agreement made the 15th day of March, A. D. 1833, witnesseth, that Richard E. Stoxe, of Uniontown, Fayette county, Pennsylvania, does hereby grant, bargain and sell to William M'Williams, of Union township, county and state aforesaid, all his right, title, interest and claim in and to a lot or parcel of ground, with two small houses thereon erected, situated on the turnpike, and adjoining lands of Philip Hudgin, James Boyle and Thomas Prentice, together with all the appurtenances and privilegs thereto belonging; possession to be given the 1st day of April next.  For which the said M'Williams does agree to pay him the sum of 350 dollars, in the following manner, viz: He hereby covenants to make to the said R. E. Stoxe, an assignment of all his interest and claim in and to a note of hand on Daniel Collier, calling for 200 dollars, and payable on the 1st day of April, A. D. 1835; another note of hand on the said D. Collier, calling for 100 dollars, payable on the 1st day of April, A. D. 1836, the remainder on the 1st day of October 1833, together with interest from the 1st of April next, until the payments be made.  The title to be made in fee simple, at the time of the last payment.  The notes to be deposited in Hugh Thompson's hands till due, or removed by consent of the parties. In testimony whereof, &c.

" RICHARD E. STOXE,     [L. S.]<br>
" WILLIAM M'WILLIAMS, [L. S.]

" N. B. The above notes are the same that were given by D.

Collier to James Beard, and assigned by the latter to William M'Williams.

"(Signed,)  WILLIAM M'WILLIAMS."

M'Williams received possession under the said agreement, and paid the "remainder" of 50 dollars therein mentioned.

On the 7th March 1835, Stoxe gave to M'Williams a receipt, which he still holds, as follows:—

"Received of William M'Williams, D. Collier's note for 200 dollars, payable on the 1st day of April 1836, in part payment of a house and lot sold him.

"Witness my hand this 7th day of March 1835.

"RICHARD E. STOXE."

The note mentioned in this receipt is one of the two notes mentioned in the article of agreement.

The other note was for 200 dollars, of which Hugh Thompson was to receive part; another part belonged to James Baird, leaving a residue of 100 dollars, apparently belonging to M'Williams; but there is no assignment on the note to R. E. Stoxe, and Mr Thompson still holds it, and it is unpaid, and payment of other notes given for the same thing is refused by Collier.

On the 29th May 1835, Martha Wilson obtained a judgment against William M'Williams, for 233 dollars 35 cents. Interest from that date.

On the 29th of March 1836, Richard E. Stoxe and wife execute a deed to William M'Williams, for the lot of ground, &c., in question, which deed has never been delivered, nor has M'Williams ever received a deed from Stoxe. The aforementioned deed seems to have been executed in the state of Ohio, and its acknowledgment is defectively certified.

On the 16th of July 1836, William M'Williams, in person, to September term 1836, No. 74, appears and confesses judgment to R. E. Stoxe, for 318 dollars. Interest from date, which is entered on the docket as "being for the purchase-money of a house and lot in Union township," which is admitted to be the same sold by Stoxe to M'Williams. Same day, parts of this judgment are assigned by plaintiff to two different persons. This judgment is revived on *scire facias* to January term 1839, No. 128, for the sum of 362 dollars 50 cents. Interest from November 16, 1838. Upon this revived judgment, a *fieri facias* issued to March term 1839, which is levied on M'Williams's estate, &c., in the house and lot sold him by the plaintiff, Stoxe. *Venditioni exponas* to June term 1839; returned "sold to Jacob F. Brant for 220 dollars."

The auditor made an appropriation of the money, after paying the costs and expenses of the audit to the judgment of Martha Wilson.

Exceptions were filed to the report, and upon argument the court below set the same aside, and appropriated the proceeds of sale to the judgment of Richard E. Stoxe.

[Wilson v. Stoxe.]

*Patterson*, for appellant, cited 11 *Serg. & Rawle* 328; 2 *Watts* 180; 6 *Serg. & Rawle* 536; 2 *Penn. Rep.* 174; 5 *Watts* 412.

*Howell* and *Deford*, for appellee, cited 4 *Watts* 470; 2 *Binn.* 146; 1 *Yeates* 393; 4 *Watts* 470; 2 *Watts* 16; 9 *Serg. & Rawle* 302.

The opinion of the court was delivered by

GIBSON, C. J.—The principle of Atwater *v.* Mathiot, 9 *Serg. & Rawle* 420, and M'Mullen *v.* Wenner, 16 *Serg. & Rawle* 20, is, that the equitable estate of the vendee, to the value of the paid purchase-money, or the legal estate of the vendor to the value of the purchase-money, for which the title is retained as a security, may be bound by a judgment against the one or the other of them, and sold on it as a separate, independent, and distinct interest in the land; and that the purchaser takes it with the rights and responsibilities of him whom he succeeds. By these two cases, as well as by Catlin *v.* Robinson, 2 *Watts* 373, and Purviance *v.* Lemmon, 16 *Serg. & Rawle* 294, it is settled, that the interests of vendors and vendees are concurrent, but distinct estates, which may be separately sold, judicially or voluntarily, without disturbance of each other; and to unsettle a principle upheld by so many cases, would not only impair all confidence in the stability of the law, but derange the symmetry of our decisions. Like all others, judgments against the owner of an equitable estate in land, rank according to priority of date; and why should a judgment obtained by the holder of the legal title be, for that reason, entitled to a preference? He has another security which another creditor has not; and though I will not say that an equity would thence arise to throw him on it, yet it is a circumstance worthy of consideration, in an inquiry whether an older judgment creditor shall be deprived of his security on the ground of personal favour. By purchasing it at the sheriff's sale, the vendor might merge the vendee's equitable interest in the legal estate, and thus preclude himself from further recourse to the property or person, as was determined in Chew *v.* Mathers, 1 *Penn. Rep.* 487; but that would not have merged an intermediate interest, or the price of it gained by a judgment creditor, and thus have given the vendor, not only his land again, but all the vendee had paid for it on the contract. The vendor, indeed, retains the title as a security for all that is unpaid; but that enables him not to make it bear on what the vendee has extricated from its hold by actual payment. There is no reason, therefore, why the vendor should give his judgment a preference over a prior lien on it, by tacking it to the ghost of his former ownership. Notwithstanding the opinion expressed by Mr Justice Duncan, in M'Call *v.* Lenox, 9 *Serg. & Rawle* 304, the creditor, in that case, was not allowed to tack his judgment on the bond to his earlier mortgage, and thus exclude the mortgagor's intervening lease. No more was decided than that the sheriff's ven-

dee, standing in the place of the judgment creditor, and having become entitled to the benefit of all his securities, had acquired the control of the mortgage, and, with it, a title to recover in ejectment paramount to the lease subsequent to it. The chief justice put the case exactly on that ground, and it is the only one on which it can be sustained. By the law, as it then stood, a mortgage being considered no more than a lien, the entire estate bound by it, whether legal or equitable, passed by a sale on any judgment whatever; and such a case bears no resemblance to the present in which the legal estate was retained. If, however, the statute since enacted was intended, as it doubtless was, to restrain such a sale to the equity of redemption, there was much plausibility in the notion exploded by Pierce *v.* Potter, 7 *Serg. & Rawle* 476, that the law must necessarily be held as it was in Jackson *v.* Ireland, 10 *Johns.* 481, in which a judgment creditor, who had sold the equity of redemption, was allowed to proceed on his mortgage against the land in the hands of the sheriff's vendee for the residue. In that case, there could be no tacking to give the judgment creditor, in his character of mortgagee, priority of recourse to the price of what his mortgage did not bind; and it would consequently bear a decisive resemblance to the present, in which the legal title did not pass. What recourse then has the holder of it? Certainly none to the price of what, as such, he did not sell. Would the mortgage creditor, in Jackson *v.* Ireland, have been suffered to take the price of the equity of redemption in preference to an older judgment creditor? To have given him that advantage, would have extended his security not only to the value of the land, but to the price of a contingency beyond it. What then was sold here? An equity, also, which was exclusively the property of the debtor, and bound by the judgments against him, as the equity of redemption was there. When the vendor sold it by execution, he sold not his legal title along with it, and a supposition that he did is the root of the fallacy. The execution was levied not on the fee, but on the vendee's interest in it; for no man wittingly sells his own estate on his own execution. In Kirkpatrick *v.* Black, *ante,* 329, it has indeed been held, that a judgment creditor who had levied his execution on the whole tract, instead of the part he had previously agreed to convey to the debtor as a settler, had postponed his title to that of the sheriff's purchaser; but it was not supposed that even that could have given him the price of the vendee's part in preference to an older judgment creditor. The holder of the legal title may cause it to pass along with the equitable estate by accident or design; but no arrangement he may make with the purchaser can squeeze out the intermediate vested lien of a creditor. Here, however, the legal title did not pass; and its existence in the hands of the vendor, gives him no other preference over an older judgment creditor, in regard to the price of the equitable estate in the hands of the sheriff, than it would give him to the price of it in the hands

[Wilson v. Stoxe.]

·of a prior purchaser under a voluntary conveyance. Retaining in either case the only security for which he stipulated, a lien on the title, let him, on the principle of Jackson *v.* Ireland, enforce it against the land in the hands of the sheriff's vendee. Let him recover the land in ejectment; but let him not throw the burthen on the sheriff's vendee, or the judgment creditors, as his caprice may ·dictate. We are of opinion, therefore, that the appellant's judgment be satisfied in the first instance.

Decree reversed, and report of the auditor affirmed.