# Zeigler, Baker & Co.'s Appeal.
# Borlin's Appeal.

1. Thomas bought by articles from Gress, paid some purchase-money, went into possession and built; Gress recovered judgment for the unpaid purchase-money, and afterwards conveyed the legal title.  *Held*, in distribution of proceeds of sale upon the judgment, that it was to be preferred to a mechanic's lien entered for a claim, whose items antedated the judgment.

2. By a sale on a judgment for purchase-money, the whole estate legal and equitable passes to the sheriff's vendee and the vendor takes his pur chase-money out of the proceeds before all others, without regard to the date of his judgment.

3. The judgment of Gress fastened upon the legal estate the instant he conveyed to Thomas.

4. Any other creditor selling the equitable interest, would sell subject to the vendor's purchase-money by virtue of his retained legal title.

5. Had the vendor sold before delivery of the deed, he would have sold the whole estate.

6. Notice of the deed in this case was immaterial.

7. Canon *v.* Campbell, 10 Casey 309; Horbach *v.* Riley, 7 Barr 81; Love *v.* Jones, 4 Watts 465; Vierheller's Appeal, 12 Harris 105 ; Waters's Appeal, 11 Casey 523; remarked on.

October 25th 1871.   Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Appeals from the Common Pleas of *Westmoreland county :* Nos. 177 and 178 to October and November Term 1871.

These were appeals from the decree of the Court of Common Pleas, distributing money arising from sheriff's sale of real estate of William M. Thomas, and were taken by Zeigler, Baker & Co., and by James Borlin, their assignee in bankruptcy.

William M. Thomas, having in September 1867, entered into articles of agreement with John Gress, Jr., for the purchase of a

[Zeigler's Appeal.]

lot of land for the sum of $135, of which he then paid $20, went into possession of the lot and built a house thereon, in the erection of which he became indebted to Zeigler, Baker & Co., for material furnished.

Gress took from Thomas a judgment note for the balance of the purchase-money, which he entered on the 24th of March 1869, and a few days thereafter delivered to Thomas a deed for the lot, which was not recorded.

On the 22d April 1869, Zeigler, Baker & Co. entered a mechanic's lien for the material referred to, which was furnished from the 24th October to the 19th November 1868, and on the 27th December 1869, obtained judgment thereon for $68.72.

Zeigler, Baker & Co. having been afterwards declared bankrupts, James Borlin was appointed their assignee.

On the 30th January 1870, the house and lot of Thomas were sold by the sheriff, under an execution issued on the judgment of Gress, and the proceeds brought into court for distribution.

The auditor to whom the distribution of the fund in court was referred, awarded it, after deducting costs, &c., to the judgment of John Gress, Jr. Exceptions to the report of the auditor were filed on behalf of Zeigler, Baker & Co., and Borlin, the assignee.

The Court of Common Pleas dismissed the exceptions and confirmed the report of the auditor.

Zeigler, Baker & Co. and James Borlin, their assignee, appealed, and assigned for error the decree of the court confirming the report of the auditor.

*H. P. Laird* and *Stewart & Clarke*, for appellants, referred to Purdon 710, pl. 11; Baker *v.* Dewey 1 B. & C. 703 (8 E. C. L. R.); Claason's Appeal, 10 Harris 359; Hill *v.* Epley, 7 Casey 331.

*John Latta*, for appellee, referred to Stoner *v.* Neff, 14 Wright 258, Waters's Appeal, 11 Casey 523.

The opinion of the court was delivered October 30th 1871, by
Agnew J.—The appellants rest their claim to the priority of their mechanic's lien over the judgment of John Gress, the vendor of William M. Thomas, the judgment debtor, on the ground that Gress having conveyed the legal title to Thomas a week or ten days after the entry of Gress's judgment for the purchase-money without taking a new security, the lien of Gress for the purchase-money is gone, and the record liens must be paid in their order of time. But to reach this result, the argument must deny the well-known effect of a judgment for purchase-money, and a sale of real estate by the vendor under it, as in this case. When the vendor sells for purchase-money, the whole estate, legal as well as equitable, passes to the purchaser at sheriff's sale, and the ven-

[Zeigler's Appeal.]

dor takes his purchase-money out of the proceeds of sale before all others, no matter in what order of time his judgment may stand on the record. This doctrine, declared in Love *v.* Jones, 4 Watts 465, was partially unsettled by Wilson *v.* Stokes, 10 Watts 434, but was returned to in Horbach *v.* Riley, 7 Barr 81, and reaffirmed in Vierheller's Appeal, 12 Harris 105; and Canon *v.* Campbell, 10 Casey 309. In this case, the deed made by the vendor to the vendee after taking the judgment for purchase-money was not recorded. As the case stood apparently, the sale being by the vendor, he sold the whole estate therefor, his own as well as his vendee's, and he would be entitled to the purchase-money out of the sale. But the legal title being vested in fact by the deed in the vendee, still the whole estate was sold and the vendor should have his purchase-money, unless met by some unbending rule of law to wrest it from his grasp. It is thought that this rule is found in the decisions, that when a vendor delivers his deed without taking a judgment upon the record on the same day, or a mortgage, his lien is gone. If in this case the vendor had had no judgment for his purchase-money, this rule would have barred him. But having a judgment already, the effect of the delivery of the deed was to add to its grasp the legal title, in which the previous equitable title of the vendee became merged. In Waters's Appeal, 11 Casey 524, Judge Woodward says: "It has been many times decided in Pennsylvania, that a judgment against the equitable estate which a vendee holds under articles of agreement for the sale and purchase of land, attaches to and binds the legal estate the instant it vests in the vendee." For this he cites numerous cases. In that case it was argued, as here, that the vendor's lien was gone because he had made a deed to the vendee two days after the entry of a judgment for the purchase-money, but the argument was answered by Justice Woodward by the principle just stated, and he says: "Now, how is Waters to be excluded? Not on the ground that his judgment was entered against only the equitable estate of Spencer, for, as we have seen, judgments so entered do attach to the legal estate as soon as it unites with the equitable; and a vendor's judgment is as much within the rule as a judgment of a third party. Vendors are usually regarded as the most meritorious creditors, and it would be refining against reason so to apply the rule as to protect other creditors, and cut out vendors." This merit, I may add, has been recognised in various laws, of which I may instance the Exemption Law of 1849, and the law as to mortgages. In the latter instance the lien of the vendor is preserved for sixty days without any recorded deed to give notice of it. In the present case, therefore, the judgment of Gress for the purchase-money fastened upon the legal estate the instant he conveyed to Thomas his vendee. The equitable and legal titles united and merged, and Gress's security expanded with the enlargement of his vendee's estate.

[Zeigler's Appeal.]

What harm was done to the mechanics' lien creditors? They had a lien only on Thomas's equitable estate when Gress entered his judgment. Had they, or any other creditor, sold the equitable interest before the legal title was added, they would have sold subject to the vendor's purchase-money, by virtue of his retained legal title, and the bid at the sheriff's sale would have been diminished to the same extent, and the vendor could have taken nothing under his judgment. Vierheller's Appeal, 12 Harris 105. Had the vendor himself sold before the delivery of the deed, he would on the contrary have passed the whole estate by his sale; but then the bid at the sheriff's sale would have been increased correspondingly, and he would have taken his purchase money out of the advanced bid. Thus the adding of the deed to the vendee's interest did the appellants neither good nor harm, and certainly ought not to work an injury to the vendor. Stoner *v.* Neff, 14 Wright 258. It left the parties just where they were; for the legal title being sold by the vendor in either event, it was in the power of the appellants to make it bring a full price, by bidding at the sale, and thus to protect all the interest they ever had under their mechanics' claim. Notice of the deed was, therefore, immaterial, the sale being on the vendor's execution. Now, on what proper principle could the vendor take a second judgment for the same debt? The debt merged in the judgment, and the vendee could not be sued again. He was not bound to give two judgments for the same thing, nor was he bound to add a mortgage to the judgment, unless his covenant obliged him. He, as well as his vendor, could claim protection of the principle, that the judgment of the vendor opened to receive the legal estate when the equitable merged in it. Upon the whole, we perceive no error in the record, and the decree of the Court of Common Pleas is affirmed, with costs to be paid by the appellants.