## IMPERIAL F. INS. CO. v. HENRY DUNHAM.

ERROR TO THE COURT OF COMMON PLEAS OF BRADFORD
COUNTY.

Argued March 15, 1886—Re-argued March 14, 1887—Decided January 3,
1888.

1. A policy of insurance contained a condition that it should be void, "if
the interest of the assured be other than the entire, unconditional and
sole ownership; or, if the property insured be a building standing on
ground not owned by the assured in fee simple : " *Held*, that the as-
sured, though but a purchaser under articles of the land on which stood
the insured property and the purchase money unpaid, was such an
owner in fee that the policy was not void under said condition.

2. Such a policy contained the provisions that it should be void "if, with-
out notice to this company and permission therefor indorsed thereon,
. . . . . or, if this policy be assigned before a loss; or, if any change
take place in the title, interest, location or possession. . . . . . No
agent has power to waive any condition of this contract." Before a
loss there was a transfer of the property followed by an assignment of
the policy assented to by the company's agent having power to "renew
and consent to the transfer of policies: " *Held*, that the agent's assent
to the assignment was an exercise of his express power and not a waiver
of a condition; and that no new consideration was required to waive
the forfeiture and to revive the operative force of the policy.

3. In an action by the assignee of the policy, it was competent for the
plaintiff to show by parol what the contract was with reference to the
existing insurance at the time when the property was transferred to
him, this being explanatory of the subsequent act of the parties in mak-
ing the assignment of the policy, and to exhibit their good faith and fix
a consideration therefor.

4. Where no copy of the application for the insurance is attached to the
policy as required by the act of May 11, 1881, P. L. 20, the application
constitutes no part of the policy or of the contract between the parties
and is therefore not receivable in evidence.

Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STER-
RETT, GREEN and CLARK, JJ.

No. 441 January Term 1885, Sup. Ct. ; court below, No. 124
December Term 1883, C. P.

In the court below the action was assumpsit by Henry Dun-
ham, to the use of F. T. Page, against The Imperial Fire

Insurance Company of London. The writ was issued on September 17, 1883, and directed to the sheriff of Philadelphia county to be served upon Charles M. Prevost, agent for defendant company, appointed in pursuance of the statute. The plea was non-assumpsit.

At the trial February 17, 1885, the following facts appeared: On April 21, 1880, O. A. Seeley purchased by articles of agreement from T. A. Smull's Sons a tract of about 640 acres of land for the consideration of $5,129.50.

On November 11, 1881, T. A. Smull's Sons conveyed their legal title to the lands ·to F. T. Page, and the same day assigned to Page their interest in the said contract with Seeley. It did not appear that Seeley had then, or at any other time, paid any purchase money on said contract; but he had gone into possession and had erected a sawmill on the land.

On February 8, 1883, O. A. Seeley obtained from D. A. Clarke, an agent of the Imperial Fire Ins. Co. of London, a policy of insurance for $1,200, distributed in various amounts to the sawmill, machinery, etc. The authority of D. A. Clarke to write policies for the said company was found in a certificate from the resident manager of its United States offices at New York city, which certificate set forth his appointment as its agent " with full power to receive proposals for insurance against loss and damage by fire in Orcutt Creek and vicinity, to receive moneys and to countersign, issue, renew and consent to the transfer of policies of insurance subject to the rules and regulations of said company and such instructions as may from time to time be given by its resident manager at New York." The application of O. A. Seeley for the insurance set out, inter alia, that the sawmill was not exposed at all by heavy woodland; swamp, always wet, next to woods ; that the buildings and machinery were both owned in fee simple by the applicant and that there was no other person interested in the property or any part of it; and the applicant made the facts and circumstances set out in the application a condition of the insurance and a warranty on the part of the assured. The policy of insurance, issued on February 8, 1883, contained provisions and covenants on the part of the assured, that the application should " be considered a part of this contract, and a warranty by the assured, and that any misstatement of the

condition, situation, or occupancy of the property insured, or the building or premises containing the same, or any concealment or omission to make known every fact material to the risk, or any overvaluation, or any misrepresentation whatever, either verbal or in writing, shall render this policy void. This policy shall be void and of no effect, if without notice to this company and permission therefor in writing indorsed hereon, the assured shall now have, or hereafter make or procure, any other insurance, whether valid or not, on the property hereby insured, or any part thereof; or, if this policy be assigned before a loss; or, if the interest of the assured be other than the entire, unconditional, and sole ownership; or, if the property insured be a building standing on ground not owned by the assured in fee simple; or, if any change take place in the title, interest, location or possession. . . . . . No agent has power to waive any condition in this contract."

On March 29, 1883, F. T. Page sold the lands referred to by articles of agreement to Henry Dunham, for $10,000, of which the sum of $400 was paid. In this contract Dunham engaged to keep the property insured for $1,200, and in case of loss by fire the insurance was to be paid to Page. The same day of this contract, O. A. Seeley assigned and transferred to Page by articles in writing all his interest in said lands under his contract with Thomas Smull's Sons, this contract to become void in case said Dunham failed to fulfill his contract with Page.

On April 14, 1883, D. A. Clarke, the agent of the insurance company, signed a statement written in the face of the policy: " In case of loss, this policy payable to F. T. Page, as his interest may appear;" and on April 17, 1883, he signed an indorsement on the back of the policy which then read: " Athens, April 17, 1883, for value received, I hereby transfer, assign and set over unto Henry Dunham, and his executors or administrators, all my title and interest in this policy, and all advantages to be derived therefrom. Witness my hand this 14th day of April, 1883. [Signed] O. A. Seeley. Assented to this 17th day of April, 1883. [Signed] D. A. Clarke, agent." The agent having so done, reported his actions to the manager from whom he afterwards had no communication on the subject.

Charge of Court below.

The property insured was destroyed by fire on May 19, 1883, and on September 3, 1883, Henry Dunham assigned his interest in the policy to F. T. Page, who was made the use plaintiff in the suit brought.

F. T. Page, on the stand as a witness on his own behalf, testified as to the contracts of March 29, 1883, and was then asked by his counsel: Q. What was the agreement, if anything, at the time, in relation to the assignment of this policy, between yourself and Dunham? Objected to. Mr. Evans: We propose to show that there was an agreement for the transfer of this policy at the time that the contracts of March 29, 1883, were made, and that it was communicated to Clarke, the company's agent. Objected to. Objection overruled. A. The agreement was that the policy should be transferred in accordance with the contracts.[1]

The same witness: Q. What reply did the agent make, if any, at the time you informed him what you wanted done with the policy? A. Why, he replied, "all right," that he would make it; that he had no objection to the transfer. Mr. Hart: We object to this. Objection overruled.[2]

Mr. Hart (in the defendant's case): We now offer in evidence the paper marked exhibit A., being the application made by Mr. Seeley for this policy of insurance. Mr. Evans: We object on the ground that the paper is immaterial and irrelevant, and that the alleged application not having been attached to the policy in suit, cannot be received in evidence, and forms no part of the contract between the parties. [See § 1, act of May 11, 1881, P. L. 20.—Rep.] Objection sustained.[3]

Mr. Hart: We now ask the permission of the court to have the application attached to the policy, and as thus attached to read it in evidence. Mr. Evans: We object to it on the ground that it would be irrelevant and immaterial to offer it in evidence even if it were attached; that the rights of the parties were fixed by the law, and the contract cannot be changed by attaching the application to the policy at this time. Objection sustained.[4]

The court, P. D. MORROW, P. J., charged the jury and answered the defendant's points as follows:

Charge of Court below.

Now, the transfer by Seeley of his interest to Page, on the 29th of March, 1883, avoided the policy, because Seeley took the insurance, and after he had conveyed his interest in the property to Page, he had no insurable interest left in it, and by the terms of the policy it was forfeited. Afterwards, on the 14th of April, 1883, Mr. D. A. Clarke, who was the agent of the company, wrote on the face of the policy that the money, in case of loss on the policy, was to be paid to F. T. Page, as his interest might appear, and Seeley assigned the policy the same day, to Dunham. [On the 17th of April, the policy was sent to Mr. Clarke, the agent, by Mr. Fellows, and Mr. Clarke approved of that assignment, and forwarded to the company by the first mail a statement or report, showing what he had done on the 14th, and also on the 17th of April. And the company, so far as the evidence in this case shows, made no objection to what had been done by Mr. Clarke.] [11]

[It is claimed on the part of the plaintiff, that, although the policy was forfeited by the transfer by Seeley of his interest to Page, on the 29th of March, yet that by the writing by Mr. Clarke, on the 14th and 17th of April, approving of the assignment, the policy was restored and left in full force as an insurance to Henry Dunham, and that is the principal question in this case. The certificate of agency from the company to Mr. Clarke testifies that David A. Clarke, . . . . . has been appointed and duly constituted agent of The Imperial Fire Insurance Company, with full power to receive proposals for insurance against loss and damage by fire in Orcutt Creek and vicinity; to receive moneys, and to countersign, issue and renew, and consent to the transfer of policies of insurance, subject to the rules and regulations of said company and such instructions as may from time to time be given by its resident manager, at New York.

Under this certificate, we think that Mr. Clarke had power to renew and reinstate that policy, provided he knew that there had been a transfer of the property before doing it.] [12]  [Confessedly, the policy was forfeited on the 29th of March, and, unless Mr. Clarke had knowledge of the fact of the transfer and forfeiture when he signed on the face of the policy, on the 14th of April, and approved of the assignment on the 17th of April, it was not renewed, and the plaintiff cannot recover.

But if you find that he did have full knowledge of the transfer of the property, and did it with full knowledge of such transfer, then we think that, under his power in that certificate of agency, the policy was restored, and became of force and binding effect upon the company.][13]

[The evidence of Mr. Page, and it is not contradicted, is that at the time the transfer was made to him by Seeley, on the 29th of March, 1883, it was talked over there in regard to the assignment of the policy, and that it was agreed that Seeley should assign to Dunham.][14]  Mr. Page also testifies that soon after, and before the 14th of April, he saw Mr. Clarke, and told him of that agreement, and also told him of the transfer of the property, and that the policy at the time he told him, being where Mr. Seeley resided, at Newfield, Tompkins Co., N. Y., it could not be done that day.  But the policy was afterwards returned, and the fact is not disputed that it was presented to Mr. Clarke, first in Mr. Fellows' office, and afterwards, for his approval of the assignment, at Orcutt Creek.

Mr. Clarke, however, swears that he had no knowlege of any transfer of the property on the 14th of April, when he wrote on the face of it, that in case of loss the money was to be paid to Page, as his interest might appear.  But he says that Mr. Fellows sent it to him by mail, and then told him, in the letter, that the property had changed hands, and that that was the first he knew of it.  He then approved of the assignment.  Now, Mr. Clarke probably knew that if there had been a transfer of the property, the policy was forfeited.  And he admits that Mr. Fellows told him that there had been a transfer then, and he approved of the assignment to Dunham, and returned it, as he thinks, by mail, and afterwards saw Mr. Page and asked him if he had received his policy, and if it was all right, and Mr. Page replied that he had received it, and that he supposed it was all right.  [Mr. Clarke also says that he afterwards made a report to the company (which is in evidence) and that he heard nothing from the company but what they approved of what he had done.  He also adds, in answer to a question of counsel, that it is usual for the company to notify him at once, in case they disapprove of any of his acts.][15]

[Now, as we said before, if you find from the evidence, that Mr. Clarke had knowledge of the transfer of the property, and

the forfeiture of the policy, on the 14th and 17th of April, and after such knowledge wrote upon it what he did, that restored the policy to force in the hands of Henry Dunham. And that is the only fact that is submitted to you as being in dispute. If you find that he had such knowledge, then the plaintiff is entitled to recover the amount of his claim. If you find that he did not have such knowledge, then the plaintiff is not entitled to recover anything.][16]

The defendant's points are thus answered:

1. The condition in the policy that the policy "shall be void and of no effect, if, without notice to the company, and permission therefor in writing, indorsed thereon, the buildings insured stand on ground not owned by the assured in fee simple," has been broken, because the interest of the assured in the land on which stood the building insured by said policy was not that of an owner in fee simple, and the plaintiff cannot recover in this case.

Answer: That is refused.[5]

2. The condition in the policy that if the interests of the assured be other than the entire, unconditional and sole ownership, the policy shall be void and of no effect, has been broken, because the interest of the assured and the property insured was not as required by said condition, and the plaintiff cannot recover in this case.

Answer: This point is also refused.[6]

3. The condition in the policy to the effect that the same should be void if, without notice to the defendant and permission therefor in writing, indorsed on the policy, the title and interest and possession of the property in the policy mentioned and hereby insured should in any way be changed, has been broken, in that, and because on March 29, 1883, the assured, O. A. Seeley, ceased to have and to own the said property and the title and interest therein had by him at the time of the issuing to him of such policy, and Henry Dunham became, on said day, and thence thereafter was the owner of the title and interest of said Seeley, so by him had before such day, and the possession, also, of said property, on said day, passed from said Seeley to said Dunham. That by reason of the said change in the title, interest and possession of said Seeley in the said prop-

erty insured, the said policy on said day became and was forfeited, and at an end.

Answer: That is affirmed. And the plaintiff cannot recover, unless you find, as I have already instructed you, that the policy was restored, with knowledge on the part of Mr. Clarke that it had been forfeited, when he wrote upon the face of it what he did write on the 14th of April, and consented to the assignment on the 17th of April.[7]

4. The policy being then forfeited and at an end on March 29, 1883, was not revived and of effect to and in favor of said Henry Dunham by reason of what occurred after that date, because:

(1) There was no agreement to that effect founded on any consideration.

(2) Nor was such forfeiture intended to be waived by the defendant, nor was the alleged forfeiture under circumstances to estop the defendant from asserting the forfeiture.

Answer: This proposition, including the first and second paragraphs of it, I refuse under the evidence in the case.[8]

(3) The acts of the agent, D. A. Clarke, did not waive such forfeiture or revive the policy. The power conferred on him by the certificate of agency of the defendant to him to consent to assignment of policies did not enable him on April 14th and 17th to make good the policy after the said forfeiture of March 29th. The restriction on his power in the policy to waive any of its conditions was operative and not qualified by his certificate of agency.

Answer: Under the evidence this third paragraph of the fourth point is refused.[9]

(4) The acts of Clarke on April 14th and 17th, though he had power, were not a waiver of the forfeiture, unless he was aware that the change of title and interest had occurred on March 29th, and with knowledge or information thereof, intended to waive the forfeiture caused thereby.

Answer: This fourth paragraph of the fourth point is affirmed.

(5) The agent, Clarke, not having power to waive the forfeiture, or the breach of the condition which caused the forfeiture, the defendant is not bound by the alleged or attempted waiver by him, unless it has ratified his acts. For

such ratification, it must be shown that the defendant had full knowledge of the forfeiture and of the facts which caused the same. The defendant cannot be held to have ratified the agent's acts, or to have intended to waive or to have waived the forfeiture, because of any knowledge or information by the agent of such forfeiture and of facts causing the same and communicated to the defendant.

Answer: In the first place we say in answer to this fifth paragraph of the fourth point, that we think Mr. Clarke having knowledge of all the facts and circumstances had the power to waive the forfeiture and restore the policy, and that if the jury believe his evidence, that he transmitted it to the company, and they approved it, it was a ratification of his act and a restoration of the policy. And Mr. Clarke testifies that when he made reports to the company, it was usual to notify him at once, if they did not approve of his acts.[10]

A verdict for $1,308 was returned in favor of the plaintiff, and judgment being entered thereon, the defendant company took this writ assigning for error:

1, 2. The admission of plaintiff's offers.[1] [2]

3, 4. The rejection of defendant's offers.[3] [4]

5. The answer to defendant's first point.[5]

6. The answer to defendant's second point.[6]

7–10. The answers to defendant's points. [7 to 10]

11–16. The parts of the charge embraced in [ ] [11 to 16]

The cause was first argued in this court on March 15, 1886; was affirmed on March 29, 1886 in a PER CURIAM which is reported in 6 Cent. R. 593; on May 28, 1886, on motion of plaintiff in error a re-argument was ordered, and the attention of counsel directed to the sixth assignment of error.[6]

*Mr. Rodney A. Mercur* and *Mr. Erastus P. Hart*, for the plaintiff in error:

1. A policy of insurance with its clauses, conditions and stipulations is the law of the legal relation between the insurer and insured, by which their mutual rights and liabilities are to be understood and measured: West Branch Ins. Co. v. Helfenstein, 40 Pa. 296; Weisenberger v. Insurance Co., 56 Pa.

443. The assignee of the policy and transferee of the property can only recover in case Seeley could recover had no assignment or transfer of either been made: State Mut. F. Ins. Co. v. Roberts, 31 Pa. 438.

2. By the provisions of the policy the assured is called upon to disclose his title, whether he has the fee or not, and whether his interest is "the entire, unconditional and sole ownership;" and by the acceptance of the policy with these provisions therein and not disclosing his true interest, the assured virtually declares that he has the fee, and that his ownership is entire, unconditional and sole: Lasher v. Insurance Co., 86 N. Y. 423; Mers v. Insurance Co., 68 Mo. 127.

3. The agent had no power to waive the forfeiture caused by the transfer of the property on March 29, 1883. If he had the power, there could be no waiver of the forfeiture without a knowledge of all the facts material and proper to be considered in determining the question: Lycoming Ins. Co. v. Mitchell, 48 Pa. 367; Cumb. V. Mut. Prot. Co. v. Mitchell, 48 Pa. 379; Diehl v. Insurance Co., 58 Pa. 443. A waiver of the conditions of the policy was beyond the scope of the agent's power: Waynesboro Mut. F. Ins. Co. v. Conover, 98 Pa. 384; Pottsville Mut. F. Ins. Co. v. Improvement Co., 100 Pa. 142.

4. The policy having been forfeited by the alienation on March 29, it could not be restored to obligatory effect without a new consideration, or unless there were circumstances that estop the defendant, neither of which exists: Ripley v. Ins. Co., 36 N. Y. 136; Titus v. Ins. Co., 81 N. Y. 410; Trask v. Ins. Co., 29 Pa. 198; Diehl v. Insurance Co., 58 Pa. 443; Beatty v. Insurance Co., 66 Pa. 17. The ratification of a previously unauthorized act of an agent, in order to bind the principal, must be with a full knowledge of all the facts: Vial v. Insurance Co., 19 Barb. 440; Bevin v. Insurance Co., 23 Conn. 244; Owings v. Hull, 9 Pet. 607; Bennecke v. Insurance Co., 15 Otto 360.

*Mr. H. F. Maynard* of *Evans & Maynard,* for the defendant in error:

The application of O. A. Seeley, was properly rejected: act of May 11, 1881, P. L. 20.

1. O. A. Seeley was the owner of the property in law and

equity.   So far as pertains to obtaining insurance, he had such
an interest and title as warranted him in saying that he was
the owner: Fire Insurance Co. v. Dougherty, 102 Pa. 568;
Siter, James & Co.'s App., 26 Pa. 178; Millville Mut. F. Ins.
Co. v. Wilgus, 88 Pa. 107; Reynolds v. Insurance Co. 2
Grant 329; Chandler v. Insurance Co., 88 Pa., 223; Kronk v.
Insurance Co., 91 Pa. 300.

2.  Under the evidence, the transfer of the property was not
complete until the policy was transferred in accordance with
the agreement: Manley v. Insurance Co., 1 Lans. 20.   But if
the transfer of the property be regarded as complete prior to
the company's consent to a transfer of the policy, there is
authority for holding that the policy was revived by subse-
quent consent: Sherman v. Insurance Co., 46 N. Y. 526;
May Ins. §§ 1, 2, 6; Carpenter v. Insurance Co., 16 Pet.
495; Angell Ins. § 1; Sadler's Co. v. Badcock, 2 Atk. 554;
Wilson v. Hill, 3 Metc. 66; Ellis Ins. 1; 1 Phillips Ins. 1;
Lam v. Ins. Co., 12 Me. 44; Rollins v. Ins. Co., 25 N. H. 207;
Folsom v. Insurance Co., 30 N. H. 240.

3.  An agent authorized to accept risks, to agree upon and
settle terms of insurance, and to carry them into effect by
issuing and renewing policies on behalf of the' company is
thereby constituted a general agent and can exercise his au-
thority as well by renewing and continuing a policy which
has expired, as by making a new one: Asso. Post v. Ætna
Insurance Co., 43 Barb. 351; Sheldon v. Atlantic Insurance
Co., 26 N. Y. 460; Carroll v. Insurance Co., 40 Barb. 292;
Flanders Ins., 437; Fogg v. Insurance Co., 10 Cush. 337.

OPINION, MR. JUSTICE CLARK:

It was certainly competent for the plaintiff to show by parol
what the contract was, with reference to the existing insur-
ance, at the time of the transaction of March 29, 1883; not, per-
haps, to add to or modify the force of the written contract
then made as between the parties, but to explain the subse-
quent act of the parties, in making the assignment of the
policy; to exhibit their good faith in so doing, and to fix the
admitted consideration upon which this was done; especially
as it appears that the parol understanding was shortly after-
wards communicated to Clarke, the agent of the company, and

met with his approval, which approval he subsequently entered in due form upon the policy. If the parties to the written contract saw fit to allow a portion of their agreement to rest in parol, and subsequently executed the assignment in pursuance of it, in good faith, certainly the company, having approved of it, cannot complain.

It may be conceded that, if any change should take place "in the title, interest, or location, or in the possession of the property," or if an assignment of the policy were made without notice to the company, and permission therefor in writing, the policy would have become forfeited; but it must also be conceded that the company, before, at the time of, or even after the transfer, had the undoubted right to ratify or consent to it, and thus to continue the policy in the hands of the transferee, who had become the owner of the property under the agreement of March 29, 1883. It would certainly be in conflict with the plainest provisions of the law, as well as with the general usage and practice of insurance, to hold that the parties being sui juris might not by consent, in conformity with the provisions of the contract itself, renew and continue its obligation, although, according to its terms, without that consent it was null and void.

If it was competent for the company to consent to the transfer, it was competent for the duly authorized officers or agents of the company to give that consent. Corporations, of necessity, act through the agency of persons authorized to act for them, and the act of the agent is in all respects to be regarded as the act of the corporation itself. David A. Clarke was at the time admittedly the agent of the company; his commission was in writing; he was the "duly constituted agent" of the company, "with full power to receive proposals for insurance against loss and damage by fire in Orcutt Creek and vicinity, to receive moneys, and to countersign, issue, renew and consent to the transfer of policies of insurance, subject to the rules and regulations of said company and such instructions as may from time to time be given," etc. Now there was no rule or regulation of the company, nor were there any instructions to Clarke exhibited in evidence, restricting his authority to the approval of transfers made before or at the time of the conveyance of the property. The authority is conferred in

the most general terms. Clarke, as the agent of the company, in the absence of such restriction, possessed the full power of the company in the several matters committed to his charge; he represented the company, and what he did within the scope of his appointment the company did. It was not required of the plaintiff to prove acts of ratification; the company was bound to know that what it directed to be done might or would be done, and without proof of ratification it must be treated as having itself done, what was done under its express authority. Where the property covered by the policy is transferred, and the policy is assigned to the vendee before the consent of the insurer is obtained thereto, although the policy may thereby be rendered void, yet by subsequently assenting to such transfer the policy is revived and becomes an operative instrument in the hands of the vendee: 1 Wood on Ins., § 116. The consent of the company's agent to the transfer revived the policy: Shearman v. Niagara Fire Ins. Co., 46 N. Y. 526.

It is true, Clarke had no power to waive any condition of the contract, but he waived no condition; the contract expressly provided for the contingency of a change in the title and for a transfer of the policy, and Clarke was duly authorized to give the consent of the company to that transfer. How can Clarke be said to have waived any condition of the contract in doing just what the contract provided for, what he was appointed to do, and what, in the exercise of a reasonable discretion for the interest of the company, it was his duty to do. Clarke knew, when he gave his approval to the transfer, that the title had changed; this fact was found by the jury, and the knowledge of Clarke was notice to the company. Moreover, by the report of Clarke to the company's office, the company had notice that the policy had become forfeited, for that report expressly stated that the title had been transferred on April 14, 1883, and that the agent's consent had not been given until the 17th of the same month. These dates were not strictly accurate, perhaps, the transfer having been effected on the 29th March preceding, but the forfeiture of the policy was as absolute after the lapse of three days as after the lapse of three months. Yet the company silently acquiesced in the act of the agent; no objection was made that the agent had exceeded his powers; in fact, no objection of any kind or char-

acter was made until after the property had been destroyed by fire. In Farmers' Mut. Ins. Co. v. Taylor, 73 Pa. 342, the policy was to be void if assigned without the written approval of the secretary; it was assigned, and an approval given in writing by the agent "for the secretary;" the agent was accustomed to approve assignments and report monthly to the company on blanks furnished for that purpose by the company; this assignment was immediately reported, in addition to the monthly reports; held, that the policy was not thereby avoided.

The assignment to Page after the loss is not within this condition of the policy; in such case the relation of insurer and insured is changed to that of debtor and creditor, and the consent of the company is not required: West Branch Co. v. Helfenstein, 40 Pa. 289; Wood on Ins., § 99.

The cases cited by the plaintiff in error, Waynesboro Co. v. Conover, 98 Pa. 384, and Pottsville Co. v. Minnequa Co., 100 Pa. 142, are wholly inapplicable to the facts in this case. That an agent may not waive the provisions of a policy, in a matter outside the scope of his agency, cannot be doubted. Nor is the view we have taken in conflict with Trask v. State Fire Ins. Co., 29 Pa. 198, or with the remaining cases cited by the plaintiff in error. It is undoubtedly true that where an insurance company is, from any cause, discharged from liability, responsibility for the loss will not re-attach by waiver without proof of authority in the party whose act of waiver is relied upon, or without a new consideration to sustain it; but where the act of the agent executing the waiver is contemplated in the contract, and the power expressly conferred upon him in writing, no new consideration is required.

The application was rightly excluded from the testimony. The provisions of the act of May 11, 1881, P. L. 20, are conclusive on this point. No copy of the application or of the by-laws of the company was attached to the policy as that act requires; it constituted, therefore, no part of the policy or of the contract between the parties, and was not receivable in evidence. The case is to be considered as if no such paper existed.

The insurance company further contends, however, that Seeley, at the time the insurance was effected, was not the

absolute owner of the premises insured. By the second condition of the policy it is provided, that "if the interest of the assured be other than the entire, unconditional, and sole ownership, or if the property insured be a building standing on ground not owned by the assured in fee simple," the policy shall be void and of no effect. On April 21, 1880, O. A. Seeley, by agreement in writing, purchased the lands in question from T. Smull's Sons; the consideration of his purchase was $5,129.50, payable in three equal annual payments, the first instalment becoming due December 1, 1880. On November 11, 1881, T. Smull's Sons conveyed the legal title and assigned the Seeley contract to F. T. Page, the effect of which was merely to put Page in the place of T. Smull's Sons as to Seeley. On February 8, 1883, the policy in suit was issued to Seeley. There is no evidence that Seeley paid any part of the purchase-money; he erected a sawmill, however, and made other improvements, and it is claimed that his interest in the land was greatly enhanced thereby at the time the insurance was effected. On March 29, 1883, Seeley, by contract in writing, assigned his interest under the contract with T. Smull's Sons to Page, who thereupon at the same time sold by articles to Henry Dunham. The consideration of the last mentioned sale was $10,000; Page to receive $5,759.18, being the balance, with interest unpaid, on the contract between T. Smull's Sons and Seeley; the residue, being $4,240.82, to be paid to and received by Seeley. There was a reservation of the title to certain timber and bark until the purchase-money was paid, an arrangement to apply part of the proceeds thereof to the purchase-money, and a provision that in the event of Dunham's failure to fulfill his contract, Seeley would resume his former relation to Page under the Smull contract. But we find nothing in the details of the several contracts of March 29, 1883, to vary the question already stated, viz.: whether or not Seeley's interest in the property insured was such as was required by his contract with the company. Where the title to property passes, and the policy is assigned to the vendee with the insurer's consent, the policy has sometimes been treated as a new contract with the vendee: Wood on Ins., § 110. But, under the decisions of this court, the assignee has always been held to take subject to all the stipula-

tions contained in the policy, and in an action by the assignee, the question of interest to be referable to the time of the issuing of the policy: State Mut. Co. v. Roberts, 31 Pa. 438; Lycoming Co. v. Mitchell, 48 Pa. 367.

At the time the insurance was effected, Seeley, as we have said, had become the purchaser in fee of the property, under articles of agreement with T. Smull's Sons ; he had the equitable title only, but he was to all intents and purposes the " owner " of the property ; he was the equitable owner in fee, and, in respect to the insurance, we think he may be said to have been the entire, unconditional, and sole owner. This provision of the policy does not necessarily distinguish between the legal and the equitable estate. If the title is conditional or contingent, if it is for years only, or for life, or in common, it is not the entire, unconditional, and sole ownership ; but the interest is the same, as it affects the contract of insurance, whether the title of the assured be legal or equitable. The purpose of this provision is, to prevent a party who holds an undivided or contingent but insurable interest in property, from appropriating to his own use the proceeds of a policy, taken upon the valuation of the entire and unconditional title, as if he were the sole owner, and to remove from him the temptation to perpetrate fraud and crime. For without this, a person might thus be enabled to exceed the measure of an actual indemnity. But where the entire loss, if the property is destroyed by fire, must fall upon the party insured, the reason and purpose of this provision does not seem to exist; and in the absence of any particular inquiry as to the specific nature of the title, or of any express stipulation in the policy that the insured held the legal or equitable title, either being available to secure an entire unconditional and sole ownership, the provision referred to can, we think, have no force to defeat the plaintiff's recovery in this case.

Where articles of agreement are entered into for the sale of land, the purchaser is considered the owner. " It does not seem to be necessary to produce this effect, that any part of the purchase-money should be paid; it results from the contract. When a part of the purchase-money is paid, the interest of the purchaser in the land is not circumscribed by the extent of the money paid, but embraces the entire value of

the land over and above the purchase-money due. He is treated as the owner of the whole estate, incumbered only by the purchase-money. If the land increase in value, it is his gain; if it decrease, if improvements are destroyed by fire, or otherwise, it is his loss:" Siter, James & Co.'s Appeal, 26 Pa. 180. Where the vendor retains the legal title he has a lien for the unpaid purchase-money: Zerby v. Zerby, 9 W. 234; Bradley v. O'Donnell, 32 Pa. 279; Zeigler's Appeal, 69 Pa. 471; but he may use the legal title to compel payment thereof: Thompson v. Carpenter, 4 Pa. 132; Woodward v. Tudor, 81* Pa. 382; Washabaugh v. Stauffer, 81* Pa. 497.

Upon these general principles of the law, the case of Millville Mut. Co. v. Wilgus, 88 Pa. 107, was decided. Wilgus had purchased the premises insured at an Orphans' Court sale, the terms of which were one half in hand, balance in one year. He made the first payment, the vendor retaining the legal title, and before the year expired the loss occurred. The condition of the policies upon which the company relied was, "that if the interest of the assured in the property be any other than the entire, unconditional, and sole ownership of the property, for the use and benefit of the assured," it must be so represented and expressed. Mr. Justice SHARSWOOD, delivering the opinion of this court, says: "The plaintiff's title was an equitable one, but it nevertheless vested in him the entire, unconditional, and sole ownership, subject to the payment of the balance of the purchase-money. This balance was practically an incumbrance. It is true the legal title was in the hands of the vendors, but they could use it only to enforce the payment of the price agreed upon. In this respect it is exactly the case of a mortgage which vests the legal title in the mortgagee for the same purpose. Had the property been swallowed up by an earthquake the entire loss would have fallen on the plaintiff." The case of Reynolds v. State Mut. Co., 2 Gr. 329, which would appear to express a different view of the law, is commented upon in the case last cited, and whilst it is said to have been correctly decided on other grounds the reasoning of the case is distinctly disapproved.

So in Kronk v. Birmingham Ins. Co., 91 Pa. 300, where the assured had executed a bill of sale of the property assured to a third party, retaining the possession, it was held, that as the

bill of sale was simply a security for money advanced, the interest of the assured was, nevertheless, as respects the insurance, to be considered "the entire, unconditional, and sole ownership of the property, for the use and benefit of the assured," whether the bill of sale was delivered before or after the insurance was effected. The Pennsylvania Fire Ins. Co. v. Dougherty, 102 Pa. 568, and Lebanon Mut. Co. v. Erb, 112 Pa. 149, although not precisely similar, are cases in confirmation of the doctrine as we have stated it.

The purchaser of real estate by articles, being responsible for the purchase-money, is liable to the whole loss that may befall it, including the loss of buildings by fire: Reed v. Lukens, 44 Pa. 200 ; therefore he is not guilty of misrepresentation if he states that the premises are his, that he is the absolute owner, although he has not paid the purchase-money: Coursin v. Penn. Ins. Co., 46 Pa. 323.

We believe the doctrine, as we have stated it, has been generally adopted, in this as well as in the other states ; no case has been cited which is in conflict with .the views we have expressed. In Hough v. City Fire Ins. Co., 29 Conn. 10, the insured, in his application, described the property as his house, and the policy contained a condition that "if the interest in the property is less than absolute it must be so represented to the company and expressed in the policy in writing, otherwise the insurance shall be void." The legal title to the property was in another party ; the insured had an equitable title only; he had made a parol contract for the purchase of the property ; had entered into the possession and made valuable improvements ; had paid a part and agreed to pay balance of purchase-money. In a suit upon the policy the company's contention was that the title was not absolute ; that as its true condition was not represented in the application, or expressed in the policy, the insurance was void. It was held, however, that if the plaintiff had the equitable title, and his interest was such that the whole loss by fire would fall on him, he must be regarded as the absolute owner of the property. To the same effect is Rockford Ins. Co. v. Nelson, 65 Ill. 415 ; Lorillard Fire Co. v. McCulloch, 21 Ohio 176 ; Noyes v. Hartford Ins. Co., 54 N. Y. 668. The omission of the owner of the equitable title to state the nature thereof will not render

a policy of insurance invalid, under a condition therein forfeiting the insurance in case the interest is other than the entire, unconditional, and sole ownership, if the fact is not so represented to the company : Pelton v. Ins. Co., 77 N. Y. 605 ; and he will be regarded as the absolute owner, although he may not have paid the purchase-money : Remsey v. Phœnix Ins. Co., 17 Blatch. 527.

We are of opinion, upon a full examination of this case in the light of all the authorities, that Seeley's title, under his contract, must be regarded as an equivalent to a fee simple ; that the unpaid purchase-money must be treated as an incumbrance upon it ; and that, in respect of the insurance, he must be considered the entire, unconditional, and sole owner. The previous decisions of this court will justify no other conclusion ; and the cases in the other states, and the views of the text writers, we find to be in harmony with our own.

The judgment is affirmed.