# THE ROCKFORD INSURANCE COMPANY

*v.*

# SARAH NELSON.

1. ERROR—*pleadings*. Where demurrers were sustained to pleas presenting defenses admissible under the general issue, which was also pleaded, and such defenses were presented by the evidence and the instructions, and considered by the jury, this court will not consider the question whether the court properly sustained the demurrers.

2. PLEADING AND EVIDENCE—*variance—declaration on insurance policy*. A policy of insurance, with the conditions annexed, constitutes an entire contract, and in declaring upon the contract, it, or a sufficient portion of it to show a right of recovery, must be set out either in terms or in substance, or there will be a variance.

3. SAME—*when condition must be set out*. Where a contract, payable only upon the performance of certain acts, is declared upon, all such precedent acts should be set out, and their performance averred. But all conditions subsequent to the right of recovery, and all acts to be done in discharge of the liability, may be omitted and left to be set up as a defense. Where precedent conditions are not set out in the declaration, there will be such a variance as to exclude the contract or obligation as evidence.

4. INSTRUCTION *as to evidence for variance*. Where the contract sued on is variant from one count in the declaration, but is admitted under another count, the court, when asked, should instruct the jury to disregard it under the count as to which it is variant.

5. INSURANCE—*construction of application as to warranty of title*. Where an application for insurance was made a part of the policy, and declared to be a warranty of the title therein specified, and in it, when asked whether the title was a warranty deed or a bond, the answer was "W. D."; and when asked "Is your property incumbered?" the answer was "None:" *Held*, that this could not be construed as representing that the assured held any particular kind of title, or the nature of the estate he claimed.

6. SAME—*proof as to the title or interest of assured*. Where an application for insurance contains no assertion of the kind of title or the nature of the estate claimed, the assured, in a suit on the policy, will not be required to prove that he held a fee. And where the declaration averred that he was the owner of the property, the plaintiff is only bound to prove an insurable interest.

7. CONSTRUCTION—*word owner*. Language not having a technical meaning must be construed with reference to the subject to which it is applied.

Thus, in a declaration on a policy of insurance, the averment of ownership will be construed to mean an insurable interest, but as in a contract or covenant to convey land, the thing sold and purchased is the land, when the vendor says in his covenant that he is the owner, and agrees to convey it to another, the law will hold the assertion of ownership to imply that the vendor held an absolute title, and agreed to convey the same.

8. INSURANCE—*what is an insurable interest.* Where a house and lot had been occupied by a husband and wife and their family as a homestead, and the husband, when he left his wife, made a verbal gift of the property to her, and she continued to occupy the same as a homestead, and by her own earnings, and with money not derived from her husband, erected buildings thereon: *Held,* that this undeniably gave the wife an insurable interest in the property, as she was the owner of the right to occupy the premises as a homestead to the extent of $1000, and had an equitable interest in the premises for improvements made thereon which a court of equity would protect even as against the husband.

9. SAME—*when company is bound by statements in application and estopped from denying their truth.* Where the agent of an insurance company makes out an application for insurance, with a knowledge of the facts, and there is no collusion between him and the applicant, the company, in a suit upon the policy, will be bound by the statements in the application as to title, the situation of the property with reference to other buildings, and the purpose for which the property was occupied.

10. But if there be fraud and collusion between the applicant and the agent, the rule is otherwise, for then the knowledge of the facts by the agent can not be considered the knowledge of the company, because if engaged in defrauding his principal, he will not be presumed to have communicated the information.

11. In a suit upon a policy of insurance, where the issue presented by the pleadings was whether there was fraud and collusion between the assured and the agent of the company in representing the building insured as being a dwelling house, when, in fact, it was being used as a public hotel, the court instructed the jury that the knowledge of the facts in regard to the purposes for which the house was used, was the knowledge of the defendant: *Held,* that the instruction was erroneous as wholly ignoring the real issue.

12. INSTRUCTION—*must relate to the issue.* In a suit on a policy of insurance, the court instructed the jury, for the plaintiff, that if they found the representation of title in the application to obtain the policy was true, and if they believed certain facts to be true, then there was no fraud in that respect when there was no issue of fraud in respect to such matters, but there was as to other matters: *Held,* that the instruction was too broad

13. SAME—*repeating principles.* This court has long and uniformly held that it is not error for the court to refuse to repeat instructions already given, although there may be a slight change in the phraseology.

14. INSURANCE—*interest.* Where, by the terms of an insurance policy the assured was only entitled to recover two-thirds of the value of the property insured in case of loss, an instruction is erroneous which directs the jury to compute interest on the value of the property destroyed

15. SAME—*violation of instructions by agent.* A violation of secret instructions by an insurance agent in taking applications and effecting insurance, will not affect the assured unless he had notice of such instructions at the time.

16. ESTOPPEL—*to question form of action.* Where a policy of insurance was burned, and the insurance company, when applied to for that purpose, furnished what they represented to be a true copy, which was not under seal, and, when sued in assumpsit thereon, they claimed that the original was under the seal of the company, and therefore the action should have been covenant: *Held,* that the company was, by its act, estopped from denying that the copy was not a true and correct one, and from urging the objection to the form of the action.

17. ACTION—*form of, on sealed instrument.* Under the statute of 1872 an action of assumpsit may be brought upon a sealed obligation, and such statute applies to actions brought before its passage as well as those brought afterwards.

APPEAL from the Circuit Court of Mercer county; the Hon. ARTHUR A. SMITH, Judge, presiding.

Mr. J. M. BAILEY, and Mr. J. I. NEFF, for the appellant.

Messrs. PEPPER & WILSON, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This was an action of assumpsit, on a policy of insurance issued by appellant to appellee. It covered a house described as a dwelling and boarding house, household furniture, beds and bedding, wearing apparel and provisions, all in the house; also a barn on the same lot, but the latter is not in controversy, as it was not burned. The declaration avers the property was destroyed by fire in such a manner as to render the company liable to pay for the loss.

Appellant filed the general issue, and fourteen special pleas, to which there were replications, followed by rejoinders.

27— 65TH ILL.

In making up the issues, several demurrers were sustained or overruled, of which appellant complains, but we deem it entirely unnecessary to consider the questions they present, as all the pleas interpose defenses that were not only admissible under the general issue, but were presented by the evidence and instructions, and considered by the jury. No practical benefit would arise to any one by determining whether the court erred in settling the pleadings, and we therefore pass them over without discussion.

It is urged that the court below erred in admitting the policy of insurance under the first count of appellee's declaration, because it is claimed that there was a variance.

The policy, with the conditions annexed, constitute an entire contract, and, in declaring upon the contract, it, or a sufficient portion of it to show a right of recovery, must be set out, either in terms or in substance. This is not like suing on a penal bond at common law, where the plaintiff might simply count on the bond and leave the defendant to set up the condition and plead performance. But in a case of this character, the money only being payable upon the assured performing certain acts, all such precedent acts should be set out, and their performance averred. But all conditions subsequent to the right of recovery, and all acts to be done by the company in discharge of their liability, may be omitted and left to be set up as a defense.

Precedent conditions were not set out in the first count, and hence there was such a variance as should have excluded the policy as evidence under the count, or the instruction to disregard it under that count, should have been given.

The declaration in this case avers that appellee was the owner of the property insured, not that she owned the house and lot in fee, as is urged by appellant.

We have carefully examined appellant's abstract, and, taking it to be correct, we conclude counsel must be under a misapprehension as to the averment. At any rate, we have been unable to find the averment they refer to in their argument.

If they infer that, because the application was made a part of the policy, and therein declared to be a warranty, she held the title specified in the application; still, when it is resorted to, we find she applied for insurance on one dwelling house, and when asked whether the title was a warranty deed or a bond, the answer is "W. D." And when asked, "Is your property incumbered?" the answer is, "None." These are the only expressions in the application in reference to appellee's title, and we fail to find, by the application of the meaning attached to words, that she has represented herself as holding any particular kind of title. The words "one dwelling house" do not import title of any kind. The letters "W. D." have no such meaning, nor does the question, "Is your property incumbered?"

If the letters "W. D." mean a warranty deed, it must appear from extrinsic evidence, if that could be received. They have no such fixed and definite meaning in the law, nor in common use, or even in the connection in which they are employed. That may be their meaning, but it is not apparent. But if it was conceded that they mean appellee's title was a warranty deed, still that is not an assertion that such a title is a fee. No member of the profession, we presume, would say that it was. All know that a warranty deed may pass a term of years, a life estate, a fee or less estate, or it may pass no estate whatever. It conveys, as all know, only the estate of the grantor, whatever it may be. If he has none, it can pass none to the grantee. These are elementary rules of the simplest character. We, then, look in vain to find any assertion in the application as to the kind of title or the nature of the estate she claimed. It, then, does not appear from the application that she was required to prove that she held a fee or other absolute estate in the lot and house.

Then, under the averment in the declaration that she was the owner of the property, what was she bound to prove? Manifestly, that she held and owned an insurable interest—

such a title as, if there should be loss, it would fall upon and have to be borne by her.

In a declaration on a policy of insurance, the averment that the assured was the owner of the property destroyed must be considered with reference to the contract of insurance. It amounts to an averment that the assured had an insurable interest, and not that he was the absolute owner of the property. When he sues, his right to recover depends upon whether he was the owner of an insurable interest, and not whether he was the absolute owner, and the averment must be so construed. It can not be construed as it would be in a contract or covenant to convey land, as in such case the thing sold and purchased is the land, and when the vendor says in his covenant that he is the owner, and agrees to convey it to another, the law holds that, as the parties understood by the covenant that it was the land that was sold, the assertion of ownership implied the vendor held the absolute title, and had agreed to convey such a title as would vest in the vendee absolute ownership.

Language not having a technical meaning must be construed with reference to the subject to which it is applied.

Then, under either the application for the insurance or the averment in the declaration, appellee was only bound to prove that she held such a title as gave her an insurable interest, and all questions beyond that were immaterial.

The question then arises whether appellee held such a title. The evidence shows that the house and lot had been occupied by her and her husband and family as a homestead; that he had abandoned her, and had made a verbal gift of the property to her when he left; that she, with the family, had remained on and occupied the house and lot as a homestead, she being the head of the family. She, by her own earnings and with her own money in nowise derived from her husband, erected the building either in whole or in part.

This undeniably gave her an insurable interest in the property. She was the owner of the right to occupy the premises

as a homestead, free from forced sale, to the extent of $1000; and appellee being entitled to her earnings, under the act of 1869, in her own right, accumulated whilst separated from her husband, a court of equity would have protected her in their enjoyment against her husband, even after placing them in the building.

We are not prepared to hold that, in equity, there was not such an execution of the gift as would, as against the husband, have compelled a conveyance. At any rate, equity would have restrained him from dispossessing her of the property, and would have charged it to the extent that she expended money in its improvement. She clearly had, as the proof shows, such an ownership as gave her an insurable interest in the property, and that was all she was required to show under her declaration.

If the agent of appellant made out the application for the insurance with a knowledge of the facts, and there was no collusion in doing so between him and appellee, then appellant is bound by its statements as to title, the situation of the property in reference to other buildings, as well as the statement as to the purposes for which it was occupied and used. Such has been the uniform ruling of this court for many years; and the fact that appellee is illiterate, being unable to write or read writing, and probably as such persons usually are not well informed and easily imposed on as to the nature and contents of written instruments, this case does not appeal to us with any force to review and overrule a long line of decisions to relieve this company from liability. If they have a meritorious defense, let it be made on the grounds presenting it, but we can not overrule established principles to relieve them. We feel that the rule is salutary and almost indispensable for the protection of a large class, if not the majority of the community, who do not know or even dream of the force and effect that is to be given to such an application when it is executed.

There are various objections taken to appellee's instructions. We see no valid objection to the first, but the second is faulty in the fact that it asserts that the knowledge of the facts in regard to the purposes for which the house was used, was the knowledge of appellant, and the jury were told to find there was no fraud in that respect. This instruction wholly ignores the issue that the house was, by fraud and collusion between appellee and the agent, represented as a dwelling and boarding house, when it was in fact a public hotel. As the issues were formed, the jury should have been left to find whether it was a hotel, and whether she knew the agent was prohibited from receiving applications to insure such buildings, and whether there was collusion and fraud in making the application as it was done. If these things were all true, then the knowledge of the facts by the agent could not affect the company unless known and assented to by them.

The knowledge of the agent in such a case would not be considered the knowledge of the company, because, if so engaged in defrauding his principal, he would not be presumed to have communicated the information to appellant.

This instruction, as we understand it, excludes the question of fraud and collusion from the consideration of the jury, and should not have been given.

It is objected that the third of appellee's instructions is wrong. It may be the instruction is too broad in telling the jury if they find the representations of her title in the application to obtain the policy were true, and if they believed certain facts to be true, there was no fraud in that respect, when there was no issue of fraud on that question. And another objection is urged that this instruction tells them that, if the supposed facts are true, they should find that appellant had an insurable interest. It is contended that she might have an insurable interest and still not be the owner, as averred in her declaration.

It seems to us that the true question is, whether the facts stated in the instruction were evidence of ownership, as averred in the declaration, and we think they were, and in that respect the instruction was not calculated to mislead the jury.

We perceive no objection to the fourth of appellee's instructions. The facts the jury are required by it to find seem, as far as we can see, to exclude any and all kinds of fraud insisted on in this case.

The eighth of appellee's instructions is liable to the objection urged against the second, in so far as it ignores the defense of fraudulent collusion.

The ninth instruction is wrong in directing the jury to compute interest on the value of the property destroyed. Now, by the terms of the policy, appellee was only entitled to recover two-thirds of the value of the house, whilst this instruction authorizes the jury to compute interest on its full value.

We see no objection to appellee's twelfth instruction. It has been repeatedly held that, where insurance agents have secret instructions, as they are believed to have generally, a violation of such instructions does not affect the assured unless he has notice of them; and the assured is not bound by the general instructions of the agent unless they are brought home to the assured by notice.

In the case of *The Ætna Ins. Co.* v. *Maguire*, 51 Ill. 342, it was said, "We desire it to be understood, in this jurisdiction at least, where an insurance company has appointed an agent, known and recognized as such, and he, by his acts, known and acquiesced in by them, induces the public to believe he is vested with authority necessary to do the act, and nothing to the contrary is shown or pretended at the time of doing the act, public policy, the safety of the people, demand the company should be liable for such acts as appear on their face to be usual and proper in and about the business in which the agent is engaged. It is the fault of the companies in sending agents out among the people, gaining public confidence by

424     ROCKFORD INSURANCE CO. *v.* NELSON.     [Sept. T.,

Opinion of the Court.

the seeming acquiescence of their constituents in the conduct of their business. When a loss happens, they should not be permitted to say, in any case, their agent acted beyond the scope of his authority, unless it shall be made to appear the assured was informed of, and knew the precise extent of the authority conferred. Any other principle, in its operation, would be turning loose upon an unsuspecting, honest and confiding people a horde of plunderers, against which no ordinary vigilance could guard." And see *N. E. F. and M. Ins. Co. v. Schellter*, 38 Ill. 166. The instruction is fully sustained by these cases.

It is objected that the suit should have been in covenant, and not in assumpsit, as the policy was under seal. This, no doubt, is true, as a general proposition, but parties may undeniably waive such rights or estop themselves from urging such objections.

In this case the original was burned, and the company, on being requested, furnished the instrument sued on, as a copy; and, having done so, they should be estopped from denying that it is a true and correct copy. To hold otherwise would be to permit appellant to successfully perpetrate a fraud on appellee. It would be no less a wrong than to induce appellee to bring the only action she could maintain on the copy, if correct, and which appellant had said was, and then, after the year had expired within which she could maintain her suit, raise the question and wholly defeat a recovery. This would be so manifestly unjust that no court could lend its sanction to such practice.

But section 18 of the statute of 1872, p. 341, has authorized this action to be brought on such a policy, even if it appeared on its face to have been under seal. It is true, this act was not adopted until after this trial was had, but it must have effect on all cases pending at the time of its passage, and must govern this case on another trial. The court did not, therefore, err in refusing to give appellant's 24th, 25th, 26th

and 27th instructions, as they were estopped from being heard to say that the policy was under seal.

In this case appellant asked the unprecedented number of forty-six instructions, many of them of great length. A large number of them were given, certainly all appellant was entitled to, and we feel no disposition to uselessly waste time in commenting on those refused, and hence pass them over by saying that we think the court acted properly in so doing.

Many of these instructions being repetitions several times stated, with no apparent purpose, unless it be to create confusion or to encumber the record, we suggest to counsel that this court has long and uniformly held that it is not error for the court to refuse to repeat instructions already given, although there may be a slight change in the phraseology.

On the question of the assessment of damages, we are clearly of the opinion that they are too large, even after the *remittitur* was entered. From the evidence, there could not have been destroyed the value of beds and bedding allowed by the jury, nor the amount of wearing apparel, even after deducting $300, the amount remitted.

The judgment of the court below is reversed and the cause remanded.

*Judgment reversed.*