# Ira J. St. Onge et al., Appellees, v. Hartford Fire Insurance Company, Appellant.

## Gen. No. 6,346.

1. INSURANCE, § 334*—*when company is bound by agent's knowledge in renewing fire policy.* Where the agent for the defendant insurance company had in his possession plaintiff's policy, which provided that other insurance on the insured property was permitted, and shortly before the expiration of the policy the plaintiff notified the agent, at the latter's instance, to renew the policy, and same was renewed, but the agent's clerk in writing it up made it read that other insurance was not permitted, and the agent knew of other insurance plaintiff had on the property and had all of the policies in his possession for the plaintiff, *held* that the company

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

was bound on such renewal policy notwithstanding the provision therein that other insurance was not permitted, in an action thereon for a loss.

2. INSURANCE, § 352*—*when right to forfeit fire policy because of additional insurance is waived.* Where the agent of an insurance company was informed by a party about to take out a policy with his company that he was about to take a second policy also with another company, *held* that such agent should have made known to such party any objection to his taking such other policy, and his silence in the matter would constitute a waiver by his company of any right to declare a forfeiture because of such other policy.

3. INSURANCE, § 447*—*what does not constitute fraud in proofs of loss.* Merely an optimistic account of the value of insured goods destroyed would not be a fraud in proofs of loss.

4. INSURANCE, § 456*—*when proofs of loss are waived.* Where an insurance company, before proofs of loss were furnished, refuses to pay such loss, such proofs are waived.

5. INSURANCE, § 669*—*when evidence is sufficient to sustain verdict in action on fire policy.* Evidence *held* to warrant the finding of the jury that plaintiff's goods lost by fire were worth in excess of $6,000, and that a verdict for the amount of plaintiff's policy accordingly was not excessive, in an action on such policy to recover for such loss.

6. WITNESSES, § 194*—*when list of goods made by owner after fire may be used to refresh memory of owner.* A list of goods lost by a fire made by the owner after the fire, *held* admissible in evidence to refresh his recollection in testifying, although he could not later at the trial remember all the details, in an action on an insurance policy to recover for such loss.

7. INSURANCE, § 620*—*when evidence as to subsequent selling price of exchanged property is admissible in action on fire policy.* Evidence as to the price at which certain real estate, given in trade for a certain stock of goods, subsequently sold for, *held* inadmissible in an action to recover on an insurance policy for the loss by fire of such goods.

8. WITNESSES, § 224*—*when question on cross-examination of not erroneous.* Where objection to a question on cross-examination whether the witness had heard another witness say certain things at the trial was sustained, *held* not error.

Appeal from the Circuit Court of Rock Island county; the Hon. FRANK D. RAMSEY, Judge, presiding. Heard in this court at the October term, 1916. Affirmed. Opinion filed February 10, 1917.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

BARGER & HICKS, SEYMOUR EDGERTON and J. B. & J. L. OAKLEAF, for appellant.

SEARLE & MARSHALL and BOLLINGER & BLOCK, for appellees.

MR. JUSTICE DIBELL delivered the opinion of the court.

On April 13, 1913, Ira J. St. Onge and Agnes A. St. Onge, his wife and partner, were conducting a general country store in the Village of Reynolds in Rock Island county. They kept dry goods, groceries, boots and shoes, jewelry, etc. In the night of that day their stock of goods was destroyed or very badly injured by a fire. At that time they had three policies of fire insurance in force upon said stock of goods, each for $2,000, one dated December 23, 1912, issued by the Springfield Fire & Marine Insurance Company, and hereinafter called the Springfield policy, one dated February 1, 1913, issued by the Assured's National Mutual Fire Insurance Company, and hereinafter called the Assured's policy, and one dated February 27, 1913, issued by the Hartford Fire Insurance Company and hereinafter called the Hartford policy. The Hartford company refused to pay the policy, and the owners brought this suit thereon and filed a proper declaration in which the plaintiffs averred at length that said policy contained a provision forbidding additional concurrent insurance, whereas it was agreed that other insurance should be allowed; and the declaration alleged facts to show that the insured did not know that the policy so read and that that portion of the policy was not binding upon them. Defendant filed a plea of nonassumpsit, with notice of four special matters of defense: (1) That this policy was forfeited by taking out the Assured's policy; (2) that this policy was forfeited by taking out the

Springfield policy; (3) that the assured presented false and fraudulent proofs of loss and thereby forfeited the policy; (4) that in the proofs of loss the owners falsely stated that the cause of the fire was unknown to them whereas they well knew how the fire was started, the intimation apparently being that the owners were responsible for the fire. This fourth claim is abandoned in this court. There was a jury trial and a verdict for the plaintiffs assessing their damages at $2,260.50. A motion for a new trial was denied, plaintiffs had judgment and defendant appeals.

The legal principles involved in this case and upon which we rely in reaching the conclusions hereinafter stated are illustrated in the following authorities: In *New England Fire & Marine Ins. Co. v. Schettler*, 38 Ill. 166, the policy sued on forbade other insurance not indorsed on the policy and not consented to in writing by the company, and made the insurance void if there was such other insurance, and there was other insurance, but the assured mentioned to plaintiff's agent when he took out this policy that he had effected insurance in two other offices, and the agent did not enter this in writing on the policy, and it was held that for this neglect the assured should not suffer. In *Farmers' & Merchants' Ins. Co. v. Chesnut*, 50 Ill. 111, there should have been mention in the application of a wooden building standing near the building insured, and the lack of which it was claimed made the insurance void. But the proof showed that assured afterwards remembered that he had failed to mention this wooden building and he went back to the office and told the agent about it, and the agent said it would make no difference. It was held that if this was true the company could not defend an action on the policy on that ground. In *Rockford Ins. Co. v. Nelson*, 65 Ill. 415, it was held that if the agent of the insur-

ance company made out the application for the insurance with a knowledge of the facts, without collusion between him and the insured, then the company was bound by the agent's knowledge. In *St. Paul Fire & Marine Ins. Co. v. Wells,* 89 Ill. 82, it was held that not only was notice to the agent of an insurance company notice to the company, but also that if the agent was otherwise cognizant of the facts and dispensed with any necessary act on the part of the assured, the company and the agent are estopped. There, there was a provision in the policy against liability if the property was vacant, and the insured in applying for the insurance told the agent that it might be vacant at times, and the agent said that would not matter, and the company was held liable, notwithstanding the property was vacant at the time of the fire. In *Phenix Ins. Co. v. Grove,* 215 Ill. 299, it was held that notice to an agent within the scope of his agency is notice to the company, and if, after the agent has notice of a fact authorizing a forfeiture, the company retains the premium it has received and does not elect to cancel the policy, it will be held to have waived the condition and to be liable under the policy. This was a case of other insurance forbidden by the policy, and the agent who took this application and issued this policy had been notified of the existence of other insurance, and nevertheless took and retained the premium, and the company was held liable. It was held in *Chicago Life Ins. Co. v. Warner,* 80 Ill. 410, that if the practice of the company and its course of dealings with the insured and others known to the insured has been such as to induce a belief that so much of the contract as provides for a forfeiture in a certain event will not be insisted upon, the company will not be allowed to set up such forfeiture as against one in whom their conduct has induced such belief. To the same effect is *Illinois Life Ass'n v. Wells,* 200

Ill. 445. The question whether there has been a waiver of a condition authorizing a forfeiture is a question of fact for the jury. *Conductors Benefit Ass'n v. Tucker,* 157 Ill. 194. Where, after a loss, an insurance company bases its refusal to pay the policy on other grounds than those which might arise from the proofs of loss, objections to the proofs of loss are thereby waived. Where the insured in his proofs of loss has overvalued the property destroyed, still, if he acted in good faith, in the honest belief that the property destroyed was worth the value he placed upon it, and the excessive valuation was not intended to deceive or defraud the insurance company, such overvaluation cannot be held to be fraudulent, and will not defeat a recovery. *Commercial Ins. Co. of California v. Friedlander,* 156 Ill. 595.

The policy sued on contained the following: "$ Nil additional concurrent insurance permitted." The policy elsewhere provided that unless otherwise provided by agreement, indorsed hereon or added hereto, it should be void if the insured then or thereafter obtained other insurance on the property. Robert P. Wait had a private bank in Reynolds and another at Taylor Ridge, and also was largely interested in farming and stock raising and was a very busy man. He was also agent for several fire insurance companies, including the Springfield and the Hartford. His sister, Pearl Wait, conducted most of his insurance business at the bank in Reynolds. Wait had a fire proof vault and kept St. Onge's insurance papers there. The Hartford and Springfield policies were issued by Wait's office and were kept for St. Onge in Wait's vaults. In that vault was a prior Hartford policy, expiring at the date of this, which had also been issued by Wait. That former policy permitted additional insurance. Just before it expired Pearl called St. Onge by telephone and asked if he wished

the Hartford policy renewed. He directed her to renew it. Shortly thereafter she was absent from the bank on account of sickness in her family. Wait called St. Onge by telephone and asked if he wanted the Hartford policy renewed. St Onge replied that he had already arranged with Pearl for its renewal, and Wait told him that she was absent and he would have it attended to. It was then written by Miss McConnell, another clerk in the bank. In the form used there was a dollar mark and a blank space for an amount and then a description of the retail stock. That blank she filled with "$2,000." Below that there was a like dollar mark and a space and description of store fixtures, etc. St. Onge had no insurance under that description and she there wrote "nil." Then followed a dollar mark with a blank space, in which might be written any unusual matter to be covered. Then followed another dollar mark and a blank space and the words "additional concurrent insurance permitted." In that blank space she wrote "nil." She duly executed the policy and placed it in the vault with St. Onge's other policy in the Springfield, and this policy was never seen by Wait nor by St. Onge until after the fire, and neither of them had any knowledge that that word "nil" had been inserted. It is entirely clear from the evidence of Wait and St. Onge that it was never intended by either of them that the word "nil" should be there inserted, but it was intended that additional insurance should be permitted by this policy. As Wait knew that the assured had other insurance in force, the policy for which was then in Wait's possession, the insurance company was bound notwithstanding the additional insurance.

But Wait did not have possession of the Assured's policy, and defendant claims that by obtaining it St. Onge forfeited the Hartford policy. It was intended that the Hartford policy should permit other insur-

ance. No limit thereon was made or suggested. We hold the policy is to be construed as if it had permitted additional insurance and had placed no limit thereon, and therefore St. Onge did not forfeit the Hartford policy by afterwards taking out the Assured's policy. But there is further proof on this subject. St. Onge testified that at the time when Pearl called him up about renewing the Hartford policy and upon his telling her to renew it, he also told her that he had taken out another policy with the Assured and that he wished to take that down to her and have it put in the vault with the Hartford and Springfield policies, and that when he had the other conversation with Wait about the renewal he told Wait not only that he wanted the Hartford policy renewed, but also that he had another policy with the Assured and he wanted it put in the vault with the Hartford and Springfield policies. Pearl Wait denied any information from St. Onge concerning the Assured's policy by that name, but she did remember that either then or about that time St. Onge called her up and asked how much insurance he had with them, and she told him, and he said something about another agent being there from another company. This matter was brought out when Hildreth, an adjuster for the Hartford, came there after the fire. At that time St. Onge produced the Assured's policy, and Hildreth told St. Onge that this violated the clause in the Hartford policy prohibiting other insurance, and St. Onge replied that Wait knew he had that policy and that he had called Pearl and told her about his other insurance. Pearl then was called into the room where Hildreth, Wait and St. Onge were and Hildreth testified that he asked her if she knew about the Assured's policy and she answered that she had some conversation with St. Onge over the telephone as to how much insurance they had written on his stock and that he was talking

with another agent about insurance. Wait testified, denying any recollection on his part that St. Onge said anything about any other insurance. The denials of Wait and Pearl were not positive, and Pearl clearly admitted what we have above stated. We think that under the law when St. Onge told Pearl that he was discussing other insurance with the agent of another insurance company, she as the representative of Wait, the agent, should have made it known to St. Onge if there was any objection to his procuring other insurance. Her entire silence in our opinion constituted a waiver of any right to now declare a forfeiture, because he did take this other insurance.

In view of what we hereafter say about the actual loss, we think it sufficient to say that in our opinion under the evidence the proofs of loss were not fraudulent. Moreover, the Hartford company, in writing, expressly refused to pay the loss sometime before the proofs of loss were furnished, and thereby waived proofs of loss, and the proofs that were furnished were unnecessary and immaterial. It is a fair question for decision under the evidence whether St. Onge in those proofs gave an optimistic account of the value of the goods that had been destroyed, but that would not be a fraud.

As there were three policies in force of $2,000 each, the Hartford company was only bound to pay one-third of the loss, and the important question is whether, after deducting what plaintiffs realized from the salvage, the loss amounted to $6,000. Defendant relied chiefly on the evidence of one Harris as to the value of that stock. He was sent to Reynolds after the fire by the manager of the Underwriters Salvage Company of Chicago. That company dealt in stock such as this was after the fire, and made a specialty of buying such property, and it was manifestly for his interest to value this property as low as possible. The fire broke

out in the nighttime and had evidently smoldered for a long time before it was discovered, for, when those who first arrived at the scene broke in the door, the smoke was so dense that they could not enter standing erect. Hose was used to deluge the goods with water and afterwards chemicals had to be used to put out the fire. Harris had never seen the goods before, yet he testified that, notwithstanding the effects of the smoke and the water and the steam and the chemicals, he could tell by an examination of the goods that they were old, shopworn, and unsalable, and his testimony was based upon his theory that before the fire they were only worth fifty per cent. of the cost price. St. Onge, familiar with the goods, testified that they were such goods as were required in that community and were salable. He had bought an old stock of goods and had sold therefrom and added thereto during the years in which he had been running it. Other witnesses who had at some time known something about the stock previously kept there testified, some depreciating it and others saying that it was an up-to-date stock of goods. The value of such material had risen in price since the oldest of the goods had been purchased. What they were worth just before the fire was a question of fact for the jury. St. Onge turned over to the adjuster such of his books and inventories as were left, and sent to the houses from which he had somewhat recently purchased goods and obtained invoices from them of his goods so purchased and turned these over to the adjuster. There is no pretense but what he truly gave to the adjuster the cost price of the goods. He may have been disposed to place a high value upon what he had in the store, and we are satisfied that Harris very unduly depreciated their value. We conclude that from the evidence the jury might fairly find that the fair value of the goods just before the fire considerably exceeded $7,000. He sold a part

of them at special sale, held for several weeks, for $800, and sold the residue for $200, and it is not claimed that he did not do as well with the remnant as he could. There were two loads of debris taken out of the store after the fire, which he testified were the remains of goods which he knew he had in the store and which were so completely destroyed that no list of them could be made at all. He testified that these goods so completely destroyed were worth $1,000. No one contradicted him. These goods are included in our estimate that there was considerably more than $7,000 worth of goods in the store. It cost something in clerk hire and rent to sell the remnants, for which $800 was obtained, but deducting the full sum of $800 and $200 and we are of opinion the jury were warranted in finding that the loss considerably exceeded $6,000. The verdict was made up of the $2,000 called for by the policy, and interest thereon. We are of the opinion that no ground exists for a holding here that the verdict was excessive.

It is contended that the court erred in rulings at the trial. St. Onge had made a list of the goods which he knew he had in the store but which were so completely destroyed that they could not be identified. The plaintiffs offered that in evidence and the court sustained an objection by defendant thereto, but it permitted St. Onge to use it to refresh his recollection in testifying. He had testified that he knew it to be true and correct. He could not remember all the details at the time of the trial, and we are of opinion that such a foundation was laid that he was entitled to use it to refresh his recollection. Vonach, a witness for plaintiffs, testified that he represented the former owner of this store in the sale of the stock of goods to St. Onge some three years before this fire. It appeared that this was a trade for real estate owned by St. Onge. On cross-examination, Vonach was asked if he did not

know that after the trade the man who then acquired that real estate sold it for $2,800, and an objection thereto was sustained, and it is claimed this was error. There are two reasons why no error was committed. To have gone into the question of the price afterwards obtained for this real estate would have involved a collateral inquiry as to why the man sold it, and whether he made suitable efforts to obtain the best price he could, and whether he made a good bargain or was cheated in the sale of the real estate. But, further, Vonach testified more than once that he did not know for what price that property was afterwards sold. It was not error to sustain an objection to a question put to St. Onge on cross-examination as to whether he heard a certain witness say certain things at the trial. Complaint is made of remarks of counsel for plaintiff to the jury. They were immediately qualified, and they were drawn out because of some effort to establish the matter alleged in the fourth paragraph of the notice of special matter which defendant set up under the general issue. An intimation had been given that the proof would show that St. Onge was responsible for the fire, and what his counsel said that is complained of was expressive of a natural indignation at that charge. It is argued that all of plaintiff's instructions are erroneous in that, where they require the jury to find from the evidence they should have read "from the evidence in the case." It is impossible that the jury should have understood that the instructions referred to any evidence except that which had been heard in that case; but, further, several of defendant's instructions contained the same defect, if it be a defect. Defendant's brief earnestly insists that under the Hartford policy that company is only liable for three-fourths of one-third of the loss. It was conceded in oral argument that there is no three-fourths clause in the policy sued on, and that that portion of the brief

SECOND DISTRICT—FEBRUARY, 1917.    139

St. Onge v. Springfield Fire & Marine Ins. Co., 204 Ill. App. 139.

was written by mistake by an attorney who did not participate in the trial. We find no reversible error in the record and the judgment is therefore affirmed.

*Affirmed.*